CASE NO.:            **11 CV - 382 CVE    TLW**

IN THE

UNITED STATES COURT

FOR THE NORTHERN DISTRICT

OF OKLAHOMA

**FILED**

JUN 17 2011

Phil Lombardi, Clerk
U.S. DISTRICT COURT

GORDON TODD SKINNER,

PETITIONER,

v.

MIKE ADDISON, WARDEN,

RESPONDENT.

PETITIONER'S OPENING BRIEF

IN SUPPORT OF PETITION

UNDER 28 U.S.C. §§ 2241, 2254

FOR WRIT OF *HABEAS CORPUS*

Gordon Todd Skinner
Inmate Number:  556865
Joseph Harp Correctional Facility
P. O. Box 548
Lexington, Oklahoma 73051

*in propria persona*
Petitioner

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

HISTORY OF THE CASE ........................................................................................ 1

I.   STANDARDS OF REVIEW AS TO *KASTIGAR*, IMMUNITY, AND FIFTH AMENDMENT VIOLATION ........................................................................... 7

A.   FIRST STANDARD OF REVIEW ................................................................ 8

B.   SECOND STANDARD OF REVIEW ............................................................ 9

RULES OF CONSTRUCTION AS TO REVIEW STANDARD ................................ 13

*CONTRA PROFERENTEM* RULES OF CONSTRUCTION AS TO IMMUNITY AGREEMENT ........................................................................................ 15

ADDITIONAL ARGUMENTS SUPPORTING INEFFECTIVE ASSISTANCE OF APPELLANT COUNSEL ........................................................................ 21

CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

## CASES CITED:

*Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995) ........................................................ 11

*Brecheen v. Reynolds*, 41 F.3d 1343 (10th Cir. 1994) .................................................... 11

*Brown v. Walker*, 161 U.S. 591(1896) ............................................................................ 19

*Conway v. Polk*, 453 F.3d 567 (4th Cir. 2006) .................................................................. 7

*Fairchild v. Workman*, 579 F.3d 1134 (10th Cir. 2009) ................................................. 11

*Franco-Lopez,* 312 F.3d at 989 ........................................................................................ 15

*Hamdi v. Rumsfeld*, 542 U.S. 537, part D (2004) ........................................................... 15

*Harrington v. Richter*, 131 S. Ct. 770 (2011) ............................................................. 9, 13

*Hawkins v. Hannigan*, 185 F.3d 1146 (10th Cir. 1999) ................................................. 10

*Hoffman v. United States,* 341 U.S. 479 (1951) ........................................................ 18, 19

*I.N.S. v. St. Cyr.* 533 U.S. 289 (2001) ............................................................................. 14

*Insyxiengmay v. Morgan*, 403 F.3d 657 (9th Cir. 2005) ................................................... 7

*Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123 (1951) ......................................... 14

*Kastigar v. U.S., 406 U.S. 441 (1972)* ...................................................................*passim*

*Marchetti v. United States*, 390 U.S. 39 (1968) ............................................................. 19

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ..................................................................... 14

*Miller v. Champion*, 161 F.3d 1249 (10th Cir. 1998) ....................................................... 7

*Neil v. Gibson*, 278 F.3d 1044 (10th Cir. 2001) ............................................................. 10

*Osborn v. Shillinger*, 861 F.2d 612 (10th Cir. 1988) ..................................................... 11

*Revilla v. Gibson*, 283 F.3d 1203 (10th Cir. 2002) ........................................................ 11

*Rogers v. United States*, 340 U.S. 367 (1951) ............................................................... 19

TABLE OF AUTHORITIES — continued

*Rompilla v. Beard*, 545 U.S. 374 (2005) ................................................................ 9, 11

*Sallahdin v. Gibson*, 275 F.3d 1211 (10th Cir. 2002) .................................................. 11

*Santobello v. New York*, 404 U.S. 257 (1971) ........................................................... 15

*Smith v. Workman*, 550 F.3d 1258 (10th Cir. 2008) .................................................... 11

*Spears v. Mullen*, 343 F.3d 1215 (10th Cir. 2003) ...................................................... 11

*Strickland v. Washington*, 466 U.S. 668 (1984) .......................................................... 12

*Teti v. Bender*, 507 F.3d 50 (1st Cir. 2007) ................................................................ 7

*Townsend v. Sain*, 372 U.S. 293 (1963) ....................................................................... 7

*United States ex rel. Touhy v. Ragen*, et al., 340 U.S. 462 ......................................... 2

*United States v. Avery*, 621 F.2d 214 (5th Cir. 1980) .................................................. 16

*United States v. Brown*, 763 F. Supp. 1518 (D. Ariz. 1991) ........................................ 20

*United States v. Cronic,* 466 U.S. 648, 104 S.Ct. (1984) ............................................. 12

*United States v. DelaFuente*, 8 F.3d 1333 (9th Cir. 1993) ........................................... 15

*United States v. Dovalina*, 262 F.3d 472 (5th Cir. 2001) ............................................. 10

*United States v. Eliason*, 3 F.3d 1149 (7th Cir. 1993) .................................................. 18

*United States v. Greenwood*, 812 F.2d 632 (10th Cir. 1987) ........................................ 17

*United States v. Hayman*, 342 U.S. 205 (1952) ........................................................... 14

*United States v. Holbrook*, 368 F.3d 415 (4th Cir. 2004) ............................................ 13

*United States v. Hubbell,* 530 U.S. 27 (2000) .......................................................... 18, 20

*United States v. North*, 920 F.2d 940 (D.C. Cir. 1990) ............................................ 4, 13

*United States v. Packwood*, 848 F.2d 1009 (9th Cir. 1988) .......................................... 15

*United States v. Pinter*, 971 F.2d 554 (10th Cir. 1992) ........................................... 16, 17

*United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991) ........................................ 13

iii

TABLE OF AUTHORITIES — continued

*United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994) ................................. 15

*United States v. Shorteeth*, 887 F.2d 253 (10th Cir. 1989) ............................... 16

*United States v. Transfiguracion*, 442 F.2d 1222 (9th Cir. 2006) .................... 15

*Wackerly v. Workman*, 580 F.3d 1171 (10th Cir. 2009) ................................... 11

*Walberg v. Israel*, 766 F.2d 1071 (7th Cir. 1985) .............................................. 8

*Williams v. Taylor*, 529 U.S. 362 (2000) ..................................................... 7, 11

*Williams v. Taylor*, 529 U.S. 420 (2000) ........................................................... 7

*Wilson v. Sirmons*, 549 F.3d 1267 (10th Cir. 2008) ........................................ 11

*Wilson v. Workman*, 577 F.3d 1284 (10th Cir. *en banc* 2009) ................... 11, 12

## OKLAHOMA COURT OF CRIMINAL APPEALS RULES CITED:

O.C.C.A. Rule 3.11 ......................................................................................... 6, 12

O.C.C.A. Rule 5.2 (C) ......................................................................................... 6

O.C.C.A. Rule 5.2(A) .......................................................................................... 6

## TREATISES CITED:

BLACK'S LAW DICTIONARY 328 (7th ed. 1999) ....................................... 15

SH0RTER OXFORD ENGLISH DICTIONARY ON HISTORICAL PRINCIPLES 2842

(6TH ed. 2007) ............................................................................................. 13

## UNITED STATES CODE OF FEDERAL REGULATIONS CITED:

28 C.F.R. § 16.21 *et sequentia* ......................................................................... 2

## CONSTITUTIONAL PROVISIONS CITED:

Amendment V, Clause 3 ............................................................................... 7, 8, 9

Article I, § 8, Clause 9 ...................................................................................... 14

iv

TABLE OF AUTHORITIES — continued

Article I, § 9, Clause 2 ................................................................................................ 14

Article III §§ 1-2 ......................................................................................................... 14

**UNITED STATES STATUTES CITED:**

18 U.S.C. § 6001 *et sequentia* ............................................................................ 13, 16

18 U.S.C. § 6002 ................................................................................................ 7, 8, 9, 16

28 U.S.C. § 2241 ........................................................................................................... 14

28 U.S.C. § 2244 ......................................................................................................... 6, 7

28 U.S.C. § 2254 ................................................................................................... *passim*

**OKLAHOMA STATE STATUTES CITED:**

22 O.S. § 1087 ................................................................................................................ 6

## HISTORY OF THE CASE

Petitioner, Gordon Todd Skinner, *pro se,* presents the following arguments and authorities in support of issuance of a writ of *habeas corpus* as to the Judgment and Sentence imposed by the District Court of Tulsa County, case no. CF-2003-4213.  Petitioner will be referred to by name or as "Petitioner".  Respondents are as follows: State of Oklahoma will be referred to as the "State"; Warden Addison will be referred to as "Warden Addison".  United States Department of Justice will be referred to as "Government" or "DOJ".  Citations to relevant portions of the record shall be as follows:

a) Original record: (O.R.--)
b) Preliminary Hearing Transcript: (P.Tr.--)
c) *Kastigar*[1] Hearing, May 25, 2005; (K1Tr.--)
d) *Kastigar* Hearing, August 8 & 9: (K2Tr.--)
e) *Kastigar* Hearing, June 12, 2006, Direct of Krystle Cole: (K3Tr.--)
f) *Kastigar* Hearing, June 12, 2006, Cross of Krystle Cole, Titled Transcript of Hearing: (K4Tr.--)
g) Sentencing Transcript: (S.Tr.--)
h) Post-Conviction Relief Original Record: (P.C.O.R.--)

On September 28, 2004, four days after an informal video arraignment and 21 days after Petitioner was brought to Tulsa under the Interstate Agreement Detainers Act ("IADA"), Petitioner filed "Defendant's Motion for a *Kastigar* Hearing, to Exclude Tainted Evidence and Disqualify the Prosecutor, to Compel Full Disclosure of All Discovery and to Dismiss the Complaint."  (O.R. 86-104)  Six days later, Petitioner's lawyer filed a 23- page brief in support of the *Kastigar* motion. (O.R. 105-126)

After review of the first *Kastigar* Brief, Tulsa County Special Judge Millie Otey granted

---

[1] *Kastigar v. U.S.,* 406 U.S. 441 (1972)

motion and ordered a *Kastigar* hearing. (O.R. 127)  The State filed no response.

Petitioner issued multiple subpoenas for Tulsa Field Office ("TFO") Doug Kidwell, an agent for the Drug Enforcement Administration ("DEA"). (O.R. 135-136)   United States Attorney ("USA") David O'Meilia, through Assistant United States Attorney ("AUSA") Cathryn McClanahan, quashes subpoenas in state court before Tulsa County Special Judge Clancy Smith. (O.R. 128-131) United States' Notice of ERRATA was filed in Tulsa County District Court. (O.R. 133-137)

AUSA McClanahan told Mr. Michael I. Aston, Petitioner's lawyer; it is a waste of time to file for a *Touhy* hearing (*United States ex rel. Touhy v. Ragen*, et al., 340 U.S. 462, A.M.C. 1044, 95 L.Ed. 417 (1951)) as Government never loses in Federal Court on these hearings. Petitioner filed a request, pursuant to 28 Code of Federal Regulations ("C.F.R.") § 16.21 *et sequentia*. AUSA McClanahan claimed she lost the request and asked Mr. Michael I. Aston to re-submit request. (O.R. 142-143)   Mr. Michael I. Aston filed a new 28 C.F.R. § 16.21 *et sequentia* request via fax and United States First Class Mail. (O.R. 142-143) USA O'Meilia does not respond in a timely manner to answer the 28 C.F.R. § 16.21 *et sequentia.*   (O.R. 150) Assistant District Attorney ("ADA") Dave Robertson and James D. "Micky" Hawkins became increasingly abusive to Petitioner and his attorneys. Petitioner was forced to waive his I.A.D.A. speedy trial rights in order to obtain a *Kastigar* Hearing and to have federal agents as witnesses at the hearing.  (O.R. 150-154)  On December 6, 2004, ADA Hawkins stated in court, the state is ready to go to trial and objected to extension of time.   On November 24, 2004, Petitioner's lawyer received a denial to 28 C.F.R. § 16.21 *et sequentia* request (letter dated November 22, 2004, post-marked November 23, 2004).

2

ADA Dave Robertson filed an untimely response to Petitioner's *Kastigar* motion.  (O.R. 156)  This response was filed on December 20, 2004; however, the certificate of mailing claims ADA Robertson gave this to Mr. Michael I. Aston on October 15, 2004. Mr. Michael I. Aston never received this filing.  In the untimely response, State raised no legal authority; however, the State makes reference to Parker Brothers Monopoly board games "get out of jail free card." ADA Robertson did not distinguish if the card came from "Community Chest" or "Chance."

On March 26, 2005, the DOJ released to ADA Dave Robertson 148 pages of discovery. On April 1, 2005, Petitioner filed "Gordon Todd Skinner's Supplemental *Kastigar* Motion and Motion to Dismiss the Charges Currently Pending Against Him" (O.R. 174-295).  The State did not respond to this motion.

Based upon "Gordon Todd Skinner's Supplemental *Kastigar* Motion and Motion to Dismiss the Charges Currently Pending Against Him," (O.R. 174-295) Tulsa County District Judge Gordon McAllister ordered a *Kastigar* hearing. On April 28, 2005, Judge McAllister ordered the State to turn over ten additional pages of discovery. Through legerdemain, Petitioner has never received these pages (Bates stamped 387-397).

On May 25, 2005, the first *Kastigar* hearing was held. (K1Tr.-) On August 4, 2005, another *Kastigar* motion was filed, videlicet: "Gordon Todd Skinner's Second Supplemental *Kastigar* Motion and Motion to Dismiss the Charges Currently Pending Against Him." (O.R. 312-363)  This motion shows definitively that the evidence utilized by the Tulsa Police was derived from Petitioner's compelled disclosures, and that the investigation by the Tulsa Police was ***wholly dependent*** on an investigation by the Drug Enforcement Administration (DEA). There was no written response to this motion by the State.

3

On August 8, 2005, a second *Kastigar* hearing ensued.  (K2Tr-) Videos and evidence were entered into the record showing the evidence was tainted and that the investigation was conducted by the DEA. Petitioner's lawyers demanded that the State produce the DEA agents involved, AUSA Allen Litchfield, and that Krystle Cole be placed on the stand.  On August 9, 2005, Judge McAllister orally denied all of the *Kastigar* motions, and refused to sign a written order. Petitioner's lawyers demanded the Judge give a written order clarifying the reasons for his denial. (See K2Tr-43, pg. 43, lines 3-14)  Judge McAllister refused, stating such a thing was not required of him. Petitioner gave notice that Petitioner would seek writ of prohibition/*mandamus*. (K2Tr- page 41, lines12-25, through page 42, lines 1-21)

Petitioner's lawyer was conflicted off.  Head Federal Public Defender Paul Brunton called Petitioner's lawyer, Kevin Adams, and based on information from USA O'Meilia, (P.C.O.R. 80) Adams conflicted himself off the case. (O.R. 366-367)  Petitioner was unable to seek a writ of prohibition/*mandamus*. (O.R. 366-367)

On June 7, 2006, new evidence was presented, from the United States Court of Appeals for the Tenth Circuit, which had not previously been available, in "Defendant's Re-Urged Motion to Dismiss for *Kastigar* Violations, or in the Alternative, Request for an Evidentiary Hearing to Determine Witness and/or Prosecutor Taint." (O.R. 406-418)  The State gave no written response but stated orally that the *Kastigar* hearing was necessary to satisfy the requirements set forth in *United States v. North,* 920 F.2d 940 (D.C. Cir. 1990).  The Judge ordered the State to go through the process of placing each one of its witnesses on the stand for a *Kastigar* hearing. Petitioner was denied access to Kristi Roberts in the *Kastigar* hearings. (Transcript-Volume III, June 15, 2006, part one, page 473, lines 1-17)  During and after the trial,

4

and throughout sentencing, Petitioner continued to raise *Kastigar* motions orally. (Trial Transcripts *passim*) (S. Tr. -8, lines 7-9) all motions were denied orally by Judge McAllister, with no written responses from the State or Judge McAllister.

The *Kastigar* claim was raised in Proposition One of Petitioner's Direct Appeal to the Oklahoma Court of Criminal Appeals ("OCCA"), *scilicet*: "Mr. Skinner's Convictions Were Obtained in Violation of the Terms of an Immunity Agreement Binding on the State of Oklahoma; Accordingly, Mr. Skinner's Convictions Must be dismissed." State filed a response. (     ) Petitioner's lawyer filed a reply. (     ) On June 11, 2009, Oklahoma Court of Criminal Appeals ("O.C.C.A."), filed an opinion denying *Kastigar* claim. (P.C.O.R. 44-74) Petitioner sought further review and relief from his unconstitutional conviction in the form of a timely filed petition for writ of *certiorari* to U.S. Supreme Court, case number 09-6594, filed on September 4, 2009 (filed within the 90 day time period). (P.C.O.R. 852) The petition for writ of *certiorari* was amended and timely re-filed on October 5, 2009. (P.C.O.R. 390-618) The petition for writ of *certiorari* was denied on November 30, 2009. (P.C.O.R. 852) On December 24, 2009, Petitioner timely filed a petition for re-hearing to the United States Supreme Court. (P.C.O.R. 852)

Within *the* one-year Anti-Terrorism and Effective Death Penalty Act ("AEDPA") time limit, Petitioner timely filed in Tulsa District Court for State of Oklahoma his first (first Post-Conviction Application after his Direct Appeal) Application for Post-Conviction Relief on October 6, 2010 (leaving 55 days in the AEDPA time bank). (P.C.O.R. 75-852) Within the Application were requests for evidentiary hearings. (P.C.O.R. 80) On November 5, 2010, Petitioner filed:

    a) Motion To Request Evidentiary Hearing On Petitioner's Ineffective Assistance Of Appellate Counsel Claim (P.C.O.R. 869-871)

    b) Motion to Request Evidentiary Hearing on Petitioner's Ineffective Assistance of Trial Counsel Claim (P.C.O.R. 872-875)

    c) Motion to Request Evidentiary Hearing on Petitioner's *Kastigar* Claim  (P.C.O.R. 875-877)

    d) Motion to Request Evidentiary Hearing on Petitioner's Government-Induced Ineffective Assistance of Counsel Claim (P.C.O.R. 881-883)

    e) Motion to Request Evidentiary Hearing on Petitioner's *Brady* and *Allen* Claims Regarding alleged Prior Kidnapping (P.C.O.R. 878-880)

On November 8, 2010, Petitioner filed a *Traverse* Reply to Respondent's Response to Petitioner's Application for Post-Conviction Relief.  (P.C.O.R. 884-890) All motions and applications were denied on November 15, 2010.  (P.C.O.R. 890-900)

Petitioner timely filed Notice of Intent to Appeal (P.C.O.R. 1008-1010) on November 22, 2010, and a timely appeal pursuant to 22 O.S. § 1087 and Oklahoma Court of Criminal Appeals Rule 5.2(A) & (C) on December 15, 2010. (                ) Concurrently, Petitioner timely filed Application for Recusal of all O.C.C.A. Judges. (                ) Petitioner timely filed Brief in Support of Petition in Error on December 15, 2010. (        ) "Evidentiary Hearings Requested" was clearly noted on the front cover of the Opening Brief in Support of Petition in Error, (        ) and numerous Requests for Evidentiary Hearings (                ) on issues were made within. Petitioner timely filed numerous motions requesting evidentiary hearings pursuant to O.C.C.A. Rule 3.11 as required by O.C.C.A. Rule 5.2(C) (7). (        ) With exception of recusal of Judge Smith all motions, applications and appeals were denied. (        )

Petitioner, now timely files Title 28 U.S.C. § 2254 petition for writ of *habeas corpus,* meeting the one-year requirement of 28 U.S.C. § 2244(d) (1) "A 1-year period of limitation shall apply to an application for writ of *habeas corpus* by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of- (A) the date on

which the judgment became final by the conclusion of direct review or expiration of the time for seeking such review." Title 28 U.S.C. § 2244(d) (2) states: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." This petition meets the time requirements of AEDPA as enunciated above.

Numerous requests for evidentiary hearings have been properly raised at State district court and O.C.C.A.; are preserved for Federal Court. (P.C.O.R.    )   Such hearings are now requested pursuant to 28 U.S.C. § 2254(e) (2) (A) (ii): "a factual predicate that could not have been previously discovered through the exercise of due diligence." Such hearings are necessary for the Court to examine the claims presented in this *habeas*. *Williams v. Taylor*, 529 U.S. 420, 432 (2000); *Insyxiengmay v. Morgan*, 403 F.3d 657, 670 (9th Cir. 2005); *Townsend v. Sain*, 372 U.S. 293, 313 (1963); *Teti v. Bender*, 507 F.3d 50, 61-62 (1st Cir. 2007); *Conway v. Polk*, 453 F.3d 567, 582 (4th Cir. 2006); *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998). *Townsend, supra*, established six criteria for such request. Petitioner meets each of these six.

I.      **STANDARDS OF REVIEW AS TO *KASTIGAR*, IMMUNITY, AND**

**FIFTH AMENDMENT VIOLATION**

Title 28 U.S.C. § 2254(d) (2) provides for independent review when an addressed decision is "based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" or when such decision is contradicted by "clear and convincing" evidence in the record. O.C.C.A.'s decision regarding Petitioner's Title 18 U.S.C. § 6002 and Fifth Amendment Rights claims, each meet that criteria. This petition requires independent review per AEDPA on two distinct standards of review as to Fifth Amendment and

7

Title 18 U.S.C. § 6002.

## A.   FIRST STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) (2) states: "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Review *de novo* is required; thusly, requested. O.C.C.A. failed to determine the correct set of facts as to Fifth Amendment, clause III violation. O.C.C.A. made factual findings that were contradicted by "clear and convincing" evidence in the record. (O.R.       &       P.C.O.R.)

Judge Chapel who wrote the O.C.C.A. opinion had a major conflict with the Petitioner. (P.C.O.R. 138-139 & 193) Judge Chapel should have recused himself in regard to appellate attorney Gloyd McCoy as he did in other cases involving Mr. McCoy. (P.C.O.R. 193) *Walberg v. Israel*, 766 F.2d 1071 (7th Cir. 1985). On appeal of Post-Conviction Relief, Petitioner made Application for recusal of the O.C.C.A. Judges involved and was granted recusal of only one Judge. (          )

Petitioner's immunity contract defined his relationship with the Government. It contains a "subsequent meetings" clause. Petitioner's meeting with the DEA on July 8, 2003, provided such immunity and the facts of such were raised repeatedly as established in the record. (Immunity Contract, specifically "subsequent meetings" clause: O.R. 87, 92-93, 118-119, 176, 197-198, 341-342)  Judge Chapel chose to remain oblivious to this immunity contract or its affect on Petitioner's case.  In failing to acknowledge the "subsequent meetings" clause of the immunity contract and the interview with the DEA on July 8, 2003, O.C.C.A. failed to reach the merits of the "essential elements" of the underlying immunized Fifth Amendment violation.

8

AEDPA requires the Federal *habeas* Courts to defer to the state court "with respect to any claim that was adjudicated on the merits," **the merits have never been reached, nor adjudicated; review de novo required**. "This court is required to independently review the record to assess the reasonableness of a state court denial of relief which failed to address an essential element of Petitioner's claim." *Rompilla v. Beard*, 545 U.S. 374 (2005).

## B.    SECOND STANDARD OF REVIEW

If one were to accept that the O.C.C.A.'s decisions in this case were on the merits, it would necessarily follow that Title 18 U.S.C. § 6002, proposition two, would be reversed on the ground that it "was contrary to… clearly established Federal law." 28 U.S.C. § 2254(d) (1) No deference to O.C.C.A. should be given as to Fifth Amendment, 18 U.S.C. § 6002, and *Kastigar* immunity contract rulings. Title 18 U.S.C. § 6002 was clearly violated; O.C.C.A. ignored this claim in the opinion. Review *de novo* is mandatory.

STANDARD OF REVIEW AS TO INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

This petition for writ of *habeas corpus* meets the standards elucidated by the United States Supreme Court in *Harrington v. Richter*, 131 S. Ct. 770 (2011), [ must show that "attorney's representation amounted to incompetence under prevailing professional norms"; and that there is *no* reasonable argument which would support counsel's failure to act as alleged in the petition.] Mr. McCoy served as attorney of record during Petitioner's Direct Appeal process. (S.Tr.-3, P.C.O.R. 112) The record is overwhelming as to Mr. McCoy's **incompetence**, which **prejudiced** Petitioner's *Kastigar* claims and no **"fair-minded"** jurist would have committed the **"unreasonable"** acts or **"unreasonable"** lack of acts.   Mr. McCoy was disbarred for **incompetence under prevailing professional norms** by the Tenth Circuit Court of Appeals.

9

(P.C.O.R. 955-968)  This disbarment was for incompetence in a time-period concomitant with Petitioner's direct appeal and the reply brief.  (P.C.O.R. 173-174, 912 &914-915)

Mr. McCoy's incompetence is demonstrated by his abject failure in drafting Petitioner's reply brief to articulate the "subsequent meetings" clause of the immunity contract and by his failure to competently show the fact that Petitioner met with DEA agents after the alleged kidnapping and assault, but prior to Tulsa Police investigation and prior to Tulsa District Attorney filing charges.  He failed to articulate this in the reply while claiming he had included these key facts. (Gloyd McCoy E-mails: P.C.O.R.-141-144,146,148,149,150,152 160,162,164-168,170-171,173-175)

Mr. McCoy was suspended by the Supreme Court of the State of Oklahoma: "Clear and convincing evidence exists demonstrating that McCoy violated multiple rules of professional conduct and disciplinary rules by which each member of the Bar Association is bound.  We conclude that the respondent's professional misconduct warrants a suspension of his license to practice law of two years and one day and imposition of cost." (P.C.O.R. 943-944, certified copy of the Supreme Court of the State of Oklahoma Order)  This suspension is for acts that occurred in the same time-period as Petitioner's Direct Appeal process. (P.C.O.R. 916-935, 953-990) "[T]he appeal would have had, with reasonable probability, a different outcome if the attorney adequately addressed the issue.' *United States v. Dovalina*, 262 F.3d 472, 474-75 (5th Cir. 2001). *Hawkins v. Hannigan*, 185 F.3d 1146, 1152 (10th Cir. 1999).

There is no reasonable argument that would support counsel's failure to counter in the reply brief the correct set of facts.  Mr. McCoy failed to properly articulate a "dead bang winner". *Neil v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001); *Banks v. Reynolds*, 54 F.3d

1508, 1514 (10th Cir. 1995). *Smith v. Workman*, 550 F.3d 1258, 1265-66 (10th Cir. 2008); *Spears v. Mullen*, 343 F.3d 1215, 1252 (10th Cir. 2003); *Revilla v. Gibson*, 283 F.3d 1203, 1220 (10th Cir. 2002); *Sallahdin v. Gibson*, 275 F.3d 1211, 1234 (10th Cir. 2002); *Brecheen v. Reynolds*, 41 F.3d 1343, 1363-64 (10th Cir. 1994); *Osborn v. Shillinger*, 861 F.2d 612, 623 (10th Cir. 1988) O.C.C.A. refused to grant Petitioner an evidentiary hearing as to ineffective assistance of appellate counsel (P.C.O.R. 869-871).

O.C.C.A. and Tulsa County District Court blatantly ignored *Fairchild v. Workman*, 579 F.3d 1134 (10th Cir. 2009) (Found in Petitioner's *TRAVERSE* filed before Tulsa District Court, (P.C.O.R. 903-908); *Wilson v. Sirmons*, 549 F.3d 1267 (10th Cir. 2008); **"We have already explained why this court has traditionally refused to regard a decision as 'on the merits' when it fails to consider the substance of the claim. But even if we were to agree, *arguendo*, that the OCCA's decisions in these cases were on the merits, it would necessarily follow that each would be reversed on the ground that it 'was contrary to... clearly established Federal law.' 28 U.S.C. § 2254(d) (1). To decide a legal claim without regard to the evidence is surely unreasonable. See** *Williams v. Taylor*, 529 U.S. 362, 416, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring) ('The [state court's] decision reveals an obvious failure to consider the totality of the omitted mitigation evidence' and therefore 'involved an unreasonable application of... clearly established Federal law, as determined by the Supreme Court of the United States.' " *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. *en banc* 2009); and *Wackerly v. Workman*, 580 F.3d 1171 (10th Cir. 2009). This court is required to independently review the record to assess the reasonableness of a state court denial of relief which failed to address an essential element of Petitioner's claim.** *Rompilla v. Beard*, 545 U.S. 374 (2005).

The Supreme Court of the State of Oklahoma wrote: "We acknowledge the attorney's evident medical issues, debilitating depression coupled within attention deficit disorder, and their contribution to his actions. Nevertheless, in consideration of the facts and upon *de novo* review, we determine that the respondent's conduct resulting in **incurable harm to the rights of those he represented**, retaining unearned fees, **continued representation of clients while alleging his incapacity to do so**, causing embarrassment to the legal profession and to this Court". (Emphasis added. Page 2, of Order. P.C.O.R. 913)  "[McCoy]... suffers from mental and physical conditions rendering him incapable of the practice of law..." in *Oklahoma Bar Journal, OBJ, vol. 81, No.25, page 2086.* (P.C.O.R. 188)  This incompetence rises to the rarely occurring level of *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. (1984). O.C.C.A. failed to identify this controlling case in their order; hence, an unreasonable determination and application of United States Supreme Court law and "was contrary to... clearly established Federal law." 28 U.S.C. § 2254(d) (1). No deference to O.C.C.A. should be given as to ineffective assistance of appellate counsel rulings. (          )

Petitioner's ineffectiveness claim certainly meets the prongs of *Strickland v. Washington,* 466 U.S. 668 (1984). "The attorney acknowledged multiple instances of misconduct involving: dishonesty, fraud, deceit, or misrepresentation; incompetence including accepting cases while under a disability; lack of diligence; failure to communicate; mishandling of funds; and the filing of untimely responses to grievance inquires. In addition, the attorney has been disbarred by the Tenth Circuit." (P.C.O.R. 912-913)  Petitioner filed motions for ineffective assistance of appellate counsel evidentiary hearings with the Post-Conviction Application (P.C.O.R. 869-874) and motions for ineffective assistance of appellate counsel evidentiary hearings, pursuant to O.C.C.A. Rule 3.11, before O.C.C.A. All were denied. *Wilson v. Workman,* 577 F.3d 1284,

12

**1294** (10th Cir. *en banc* 2009), controls; hence, incompetence is *dehors*[2] the records, *ergo* review *de novo* is mandated.

Without doubt the spirit of the Court in *Richter, supra,* is reached, as is the letter of the law. *Harrington v. Richter*, *supra*, is not a bar as to the instant case. Rather, it is support to the above claim, as all prongs enunciated in *Richter* are met.

### RULES OF CONSTRUCTION AS TO REVIEW STANDARD

In assessing these Federal immunity issues, this *habeas* Court is not bound to give any deference to the ruling of O.C.C.A. or the Tulsa District County Court. Reviewing any Federal immunity claim under any gatekeeper provisions of AEDPA is a **Procedural Due Process** violation, this is *sine qua non*[3]: propositions one, two and three are to be reviewed *de novo.*

"[D]eclining to 'place great weight' on the lower court's factual conclusiveness." *See United States v. North*, 910 F.2d 843, 867 (D.C. Cir. 1990); *United States v. Holbrook*, 368 F.3d 415, 420 (4th Cir. 2004); *United States v. Poindexter*, 951 F.2d 369, 374-75 (D.C. Cir. 1991) ("Whatever the exact contours of the district court's legal standard... its view was clearly too narrow to permit us to defer to its ultimate findings on this issue"). This case was a Federal case that would have been in the Federal Court had it not been for the attempt to sanitize the true origins of the case and launder the illegally obtained evidence through the interposition of an intermediary; the Government passed the case on to the State, intending that sovereign to prosecute. (P.C.O.R. page 414, ¶ 2) AEDPA should not apply, no deference should be given to O.C.C.A. in analysis of the *Kastigar*, Title 18 United States Code § 6001 *et sequentia*, or Federal

---

[2] Law.  Outside of; not within the scope of.  SH0RTER OXFORD ENGLISH DICTIONARY ON HISTORICAL PRINCIPLES 2842 (6th ed. 2007)
[3] Latin: An indispensable person or thing; esp. an essential condition or element. SH0RTER OXFORD ENGLISH DICTIONARY ON HISTORICAL PRINCIPLES 2842 (6th ed. 2007)

immunity claims, as this is a Federal case imposturing as a state case in a state court; hence, review *de novo* is required. (P.C.O.R. 390-618).

In other words, a state prisoner (who is truly a federal prisoner in the instant case) has "rights of collateral attack" inherent in **Procedural Due Process**. *United States v. Hayman*, 342 U.S. 205, 219 (1952). A Judge ordained under United States Constitution Article III ("Article III") must review *de novo* this Federal Executive crime against Petitioner. Congress violates Article l, § 9, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it" via AEDPA's gatekeeper and latchkey provisions. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 168 (1951)). In reality, Petitioner seeks a Title 28 U.S.C. § 2241, a true writ of *habeas corpus*, denied Petitioner for years. "Likewise, we have made clear that, unless Congress acts to suspend it, the Great Writ of *habeas corpus* allows the Judicial Branch to play a necessary check on the Executive's discretion in the realm of detentions." *See I.N.S. v. St. Cyr.* 533 U.S. 289, at 301 (2001).

The Executive branch ordered compelled testimony from Petitioner then used a corrupt justice system acting as a separate sovereign in name only, to charge Petitioner, then the same bad actors of the Executive Branch conflicted off lawyers in the process of Petitioner trying to seek review by a higher state court and then a true Federal habeas to Federal Court, and then to intensify wrong doing, the lawyer brought in informed Petitioner that he must go through jury trial first before Federal review. Petitioner demands *de novo* review by an Article III Judge. With the help of the Article I Courts, the Legislative and Executive Branches have a tessellated

14

unconstitutional scheme that creates a diabolical labyrinth in which to trap the Petitioner so as to deny him *habeas* review as to his unlawful and unconstitutional detention. "At its historical core, the Writ of *Habeas Corpus* has served as a means of reviewing the legality of Executive detention, and it is in the context that its protections have been strongest." *Hamdi v. Rumsfeld*, 542 U.S. 537, part D (2004) (Justice O'Connor, Judgment of the Court). Government is wearing the ageless badge of tyranny in the use of compelled testimony to extract revenge on Petitioner.

## *CONTRA PROFERENTEM* RULES OF CONSTRUCTION AS TO IMMUNITY AGREEMENT

In assessing the Petitioner's immunity contract, *Santobello v. New York*, 404 U.S. 257 (1971) (O.R. 94)[4] controls, with additional guidelines set forth in *United States v. Transfiguracion,* 442 F.2d 1222 (9th Cir. 2006). There, the Ninth Circuit Court of Appeals said:

> One tenet of contract law we have steadfastly applied to [government/defendant] agreements, of particular importance to this case, is that of *contra proferentem,* the principle that ambiguities in contracts "are to be construed unfavorably to the drafter." BLACK'S LAW DICTIONARY 328 (7th ed. 1999). In the contest of [government/defendant] agreements, the government is usually the drafter and must ordinarily bear "the responsibility for any lack of clarity." *Franco-Lopez,* 312 F.3d at 989 (internal quotations marks omitted). Ambiguities are therefore construed "in favor of the defendant." *Id.* (internal quotation marks omitted); *See also United States v. DelaFuente*, 8 F.3d 1333 (9th Cir. 1993) ("Construing ambiguities in favor of the defendant makes sense in light of the parties' respective bargaining power and experience.") As a defendant's liberty is at stake, the government is directly held to the literal terms of the [government/defendant] agreement it made. *United States v. Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988), so that "[t]he government gets what it bargains for but nothing more." *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994)

442 F.3d at 1228.

Petitioner was ordered[5] on October 19, 2000, to "provide information, cooperation, testimony, such documents as you may control, and evidence concerning all facts within your

_____

[4] Direct Appeal Brief, P. 25.

[5] See O.R. 92-93

knowledge regarding the subject matter involved.  In exchange for your agreement to cooperate with the undersigned and/or other Federal agents, the United States Department of Justice, Narcotic and Dangerous Drug Section agrees that **no statement** or **other information** (including documents) given by you during this and **subsequent meetings** will be used **directly** or **indirectly** against you **in any criminal case**, as those terms are understood in 18 U.S.C. § 6002, subject to the provisions of this letter." (Emphasis added.)  This Order by the Executive Branch was signed by Deputy Attorney General John Roth, pursuant to Title 18 U.S.C. § 6001, *et sequentia*. Specifically, § 6002 states:

> ...the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information may be used against the witness in any criminal case, except a prosecution for perjury,[6] giving a false statement, or otherwise failing to comply with the order.[7]

The logic is straight forward that the immunity contract combined with wording of 18 U.S.C. § 6002 yields a rolling immunity grant.[8]

> Cooperation agreements, "like plea agreements, function as an 'essential part' of the criminal justice process and are 'highly desirable' as means to assist law enforcement investigative efforts." *United States v. Pinter*, 971 F.2d 554, 557 (10th Cir. 1992).[9]

The immunity contract is a cooperation agreement and is governed by pertaining case law. *Pinter,* enunciates the following:

> "…[P]romises in cooperation agreements, 'whether directly or indirectly made, must be fulfilled to their fullest extent in furtherance of fair and proper administration of justice. *United States v. Avery*, 621 F.2d 214, 215 (5th Cir. 1980). Moreover, construction of such agreements 'requires determining what the defendant reasonably understood' when the agreement was executed. See *United States v. Shorteeth*, 887 F.2d 253, 256 (10th Cir. 1989); *United States v.*

---

[6] Petitioner has never been charged with perjury, nor is any part of this instant case perjury.

[7] Petitioner kept his part of the immunity contract.

[8] See P.C.O.R. 408-411

[9] Found in O.R. 193 and found in Direct Appeal Brief filed before O.C.C.A., page 24.

*Greenwood*, 812 F.2d 632, 635 (10th Cir. 1987); *Pinter*, 971 F.2d at 557 (10th Cir. 1992).[10]

Petitioner testified under a Judicial "Use" Immunity order[11] in Topeka Federal Court in winter and spring of 2003.  Petitioner testified about prosecutorial misconduct.[12]  Petitioner was threatened[13] while on the stand and while in the courtroom,[14] and further threatened outside the courtroom.

Petitioner was advised by attorneys to leave the United States as soon as possible.  A massive investigation started involving U.S. Attorneys, Drug Enforcement Administration, Federal Bureau of Investigation ("FBI"), and possibly Department of Interior ("DOI").

Petitioner discovered that he was being investigated, contacted DEA and confronted agents about illegal aspects of the investigation.  Agents denied any investigation.  Tulsa attorney Mr. H. I. Aston, representing Petitioner, made an appointment for both Aston and Skinner to speak with DEA in person.  DEA cancelled the July 4, 2003 appointment and rescheduled the appointment to take place on July 8, 2003. DEA-6 forms show that, on July 4, 2003, these same agents were investigating Petitioner's Amerisuite Hotel stay and Petitioner's emergency room visits.  The alleged event that Petitioner was convicted of occurred over this July 4th holiday weekend. On July 8, 2003, Petitioner, with Mr. H. I. Aston, went into the Tulsa DEA offices to explain the illegal nature of the Government's investigation.  DEA agents turned this into an

---

[10] Found in O.R. 194 and found in Direct Appeal Brief filed before O.C.C.A., page 25.
[11] See O.R. 97-99
[12] See O.R. 236-237
[13] See K2Tr.- page 16, lines22-25, page 17, lines 1-11.
[14] See K2Tr.- page 16, lines22-25, page 17, lines 1-11.

17

interview.  After the interview with Petitioner, DEA agents and AUSA Litchfield met with Betty

Stetler later that same day.[15]  An intense DEA investigation ensued, resulting in the discovery of

an alleged kidnapping and assault conspiracy, with Brandon Green being the alleged victim.  The

DEA brought in the FBI.  Then the DEA turned over information to Tulsa Police who built a

case a month after alleged event. Petitioner was not charged until over two months after the

alleged crimes involving Green were said to have occurred.

> Compelling a suspect to give testimony is not the only source of a prosecutorial
> obligation to refrain from using information; such an obligation also may arise as
> part of an agreement under which the suspect provides information in exchange
> for a promise from the prosecutor not to use it against him (use immunity) or, not
> to prosecute at all (transactional immunity)..Agreements of this nature are
> enforced not only because of the self-incrimination clause requires prosecutors to
> scrupulously adhere to commitments made to suspects in which they induce the
> suspects to surrender their constitutional rights in exchange for the suspects
> giving evidence that the government needs against others which simultaneously
> implicates themselves. *United States v. Eliason*, 3 F.3d 1149, 1152-1153 (7th Cir.
> 1993).[16]

The record is clear as to the above, as shown in great detail in *habeas* application. The

State's case is in clear violation of *Kastigar v. United States*, 406 U.S. 441 at 460 (1971).[17]  The

*Kastigar* policy catalog rules and tools states:

> **This total prohibition on use provides a comprehensive safeguard barring** the
> use of compelled testimony as an "investigatory lead," and also **barring the use
> of any evidence obtained by focusing the investigation on a witness as a result
> of his compelled disclosures.**

The DEA used "link[s] in the chain of evidence" to build a case against Petitioner in

violation of *United States v. Hubbell,* 530 U.S. 27 (2000) (quoting *Hoffman v. United States,* 341

---

[15] See O.R. 225-230.

[16] Found in O.R. 194 and found in Direct Appeal Brief filed before O.C.C.A., page 25.

[17] See O.R. 87.

U.S. 479 (1951).[18]  Petitioner need not meet this standard. However, the record clearly shows links in the chain of evidence.  The heavy burden was on the prosecution as *Kastigar* states:

> This burden of proof, which we reaffirm as appropriate, is not limited to a negation of taint; rather, it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony.

> *Kastigar*, 406 U.S. at 461.

No attempt by the prosecution was made to trace back the information to the source, as required by *Kastigar*.  No attempt was undertaken by the prosecution to analyze which piece of information came from which specific compelled statement.  No effort was made to trace any information back to any source compelled or otherwise.

The Government was barred under the logic of *Kastigar* and *Marchetti v. United States*, 390 U.S. 39 (1968) from filing charges.  The alleged crime was ongoing; hence, *Marchetti* would control:

> Yet, if factual situations in which the privilege may be claimed were inflexibility defined by a chronological formula, the policies which the constitutional privilege is intended to serve could easily be evaded.  Moreover, although prospective acts will doubtless ordinarily involve only speculative and insubstantial risks in incrimination, this will scarcely prove true.  As we shall show, it is not true here.  We conclude that it is not mere time to which the law must look, but the substantiality of the risk of incrimination. (*Id. 705-706; 390, at 54*)

The Supreme Court looks to "links in the chain of evidence" ("…he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in a chain' of evidence tending to establish his guilt.")[19], and to the test which

---

[18] See O.R. 312.

[19] *Marchetti*, 390, at 49.

19

establishes that, "The central standard for the privilege's application has been whether the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hands of incrimination. *Rogers v. United States*, 340 U.S. 367, 374 (1951); *Brown v. Walker*, 161 U.S. 591, 600 (1896)."[20] As *Rogers*, *Hoffman*, and *Marchetti* show us, a fear of exposing "links in the chain of evidence" is sufficient to meet the standard.

> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal statute but likewise embrace those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime. *United States v. Hubbell*, 530 U.S. 27 (2000)

The State is barred from the illegal evidence because the alleged crime ended when Brandon Green left the state; however, *Marchetti* bars the use of the evidence as a continuing crime. The only case that Petitioner has found that comes close to the same chronological analysis is *United States v. Brown*, 763 F. Supp. 1518 (D. Ariz. 1991). The courts logic in that case assists in logic in this case "if" the Government was to have tried to prosecute. The State is also bound by the same logic.

The nonsense that O.C.C.A. Judge Chapel wrote about an "independent source" being the alleged new crime has no place in ***any*** legal context. The application of *Marchetti* to use of earlier compelled testimony was farcical at best. In context of the Petitioner's claim, use of *Marchetti* was obvious as to July 8, 2003 DEA interview and "subsequent meetings" clause of contract. Please read Petitioner's petition for writ of *certiorari* for guidance as to the absurd opinion written by Judge Chapel. (P.C.O.R. 390-618)

It was not the burden of the Petitioner to trace out lines of investigation and lines of

---

[20] *Marchetti*, 390, at 53.

evidence, nor was it his duty to identify which compelled testimony resulted in which piece of information used to convict. Petitioner showed that the States case was not their own, nor was it an independent investigation. Once that was shown the State had the duty to show where the DEA and the FBI and the DOI came up with the witnesses, evidence, and the information leading to such. The information given to the Tulsa Police, by the DEA and DOI, was never analyzed as to how such was obtained. The witnesses that were turned over to the State and how the Government obtained such has never been explored by the State. The State made no such attempt to shoulder their burden required by *Kastigar*. One can understand the reason the State avoided this rigorous endeavor any effort only strengthened Petitioner's claim of an immunity violation. Review *de novo* is required, with the writ of *habeas corpus* to be issued.

## **ADDITIONAL ARGUMENTS SUPPORTING INEFFECTIVE ASSISTANCE OF**

## **APPELLANT COUNSEL**

Petitioner tried to terminate Mr. McCoy many times, as evinced by the following:

- "I have since been contacted by Mr. Gloyd McCoy, the attorney handling the appeal, and he informed me that he had been fired, by Mr. Skinner, but has yet filed an Application to Withdraw." SWORN AFFIDAVIT of Mary M. Hawthorne, Official Court Reporter, Dated February 14, 2008. (O.R. 688)

- "This correspondence is to be considered official notice that I no longer require your services, due to your lack of performance, failure to keep an open communication with myself and my representatives and your failure to provide me with the Bates-stamped pages, as you have continually promised over the last twenty-two months. I find it totally reprehensible that you failed to properly file the Notice of Intent to Appeal and then lie to me about that deficiency for eleven (11) months. Even after resolving that situation, the lies and procrastination have continued." Letter from Petitioner to Mr. McCoy, filed in Federal Court District of Nevada, Ninth Circuit, Oklahoma Bar Association, O.C.C.A., U.S. Supreme Court. Notarized on May 12, 2008. **(P.C.O.R. 121)**

21

- "Mr. McCoy has been terminated for willful neglect of duty, procrastination and various continual lies. See *Exhibit A*. Mr. McCoy's actions can be considered nothing less than ineffective assistance of counsel and Appellant Skinner does not wish to allow Mr. McCoy to further jeopardize his appellate rights. Mr. Skinner has attempted to retain first-class counsel…" Motion filed by Petitioner. **(P.C.O.R. 123)** O.C.C.A Court Clerk Claims this filing has been lost. **Originally filed in Federal Court as an exhibit in 2008.**

- "Greetings. I have a great deal of difficulty with my appellate counsel, Gloyd McCoy. I have been forced to proceed on my own behalf and I have questions related to the status of my appeal time. Has the clock begun to run on the deadline to have my appeal filed? I have not received the totality of my transcripts, so I do not believe my time has started, however, I would like a definitive answer from your office." Letter from Petitioner to Court Clerk of O.C.C.A., dated May 14, 2008. **(P.C.O.R. 125)   Originally filed in Federal Court as an exhibit in 2008.**

- **OKLAHOMA   BAR   ASSOCIATION   RESPONSE   TO COMPLAINT**, Dated Mar 16, 2008, **(P.C.O.R. 127) Originally filed in Federal Court as an exhibit in 2008.**

- Letter to Court Clerk of O.C.C.A, from Petitioner to O.C.C.A., dated May 20, 2008. **(P.C.O.R. 129) Originally filed in Federal Court as an exhibit in 2008.**

- Proof Mr. M. I. Aston came to prison housing Petitioner on June 3, 2008. **(P.C.O. R. 131)   Originally filed in Federal Court as an exhibit in 2008.**

- Proof Petitioner hired Mr. M. I. Aston for Direct Appeal. Dated June 3, 2008. **(P.C.O.R. 133)   Originally filed in Federal Court as an exhibit in 2008.**

- Order of O.C.C.A. Denying Petitioner Termination of Mr. McCoy, filed June 9, 2008. **(P.C.O.R. 135)   Originally filed in Federal Court as an exhibit in 2008.**

- Statement of Petitioner concerning above. **(P.C.O.R. 138-139) Originally filed in Federal Court as an exhibit in 2008.**

Petitioner tried to control his Direct Appeal, dealing with an incompetent and mentally ill

attorney, *scilicet*:

- "Todd is almost finished with proposition 1, which is approx. 17 pages long.
  He is not working on propositions 2 through 8, that is your responsibility.
  You never added the proposition of the lack of discovery of the FBI reports as you said you would.  Do this ASAP." E-mail to Mr. McCoy. **(P.C.O.R. 162)**

- "You never added that the government induced ineffective assistance counsel, and ineffective assistance of councel [*sic*]." E-mail to Mr. McCoy, dated December 1, 2008. **(P.C.O.R. 162)**

- "You never added the claim of Hauk's sex crimes against minors." **(P.C.O.R. 162)**

- "You never changed the name from Krystal Cole to Christie Roberts in regards to the Kastigar Hearing." **(P.C.O.R. 162)**

- "Did you receive the discharge claim from New Jersey?" E-mail to Mr. McCoy dated August 4, 2008. **(P.C.O.R. 166)**

- "No one has heard from you.  Please call me at 1-800-331-3263 ASAP.  You have missed both the dates you promised to see Todd. You have not called him, and he needs to talk to you before you come to visit him.  The extension time is almost up.  Todd is working on the Kastigar proposition response.  He is not doing anything on the other propositions because he doesn't have any resources to use.  Your payment was sent to you over a week ago, which was to enable you to go visit the facility." E-mail to Mr. McCoy dated November 18, 2008. **(P.C.O.R 171)**

- "Todd called me today and said it is vital that you call him at DCC- today if possible, but tomorrow at the latest- to discuss what he says are numerous typos and missing propositions in the draft of the appeal he received." E-mail from Bill Wynn to Mr. McCoy, dated August 20, 2008. **(P.C.O.R. 146)**


The following email from Gloyd McCoy to Petitioner clearly shows McCoy's incompetence as he makes assertions that have no basis in legal fact, court rules or procedures. Additionally, it demonstrates that McCoy's incompetence would have been known to the O.C.C.A., suggesting also that the O.C.C.A. may have intentionally

23

"invited error" in misadvising McCoy:

- "Todd, I talked with **my source at the CCA** and **was told that a motion for extra pages would be denied. I was also told that we could bootstrap what was left out in a motion for oral argument which can be filed in the next two weeks. I edited your 24 pages and got the gist of it in. We will make it up. Review what you think is missing and we will talk later about motion for oral argument.** Judge Charles Johnson becomes presiding judge in Jan. and we can make motions for correction and whatever we need. If I would have filed a brief over 10 pages it would have slowed things done and we would have had to do ten pages later. **This way case is at issue. You have raised everything for later use. The concept is all that is need be raised to preserve the issue.**" E-mail from Mr. McCoy to Dianna Burns to be sent to Petitioner, dated December 9, 2008. **(P.C.O.R. 173)** (Emphasis added.)

Proof of conflict between Riggs/Abney and McCoy and D.A. Harris and O.C.C.A. Judge

Chapel, *videlicet*:

- "Chapel founded one of the largest firms in Tulsa-Chapel, Riggs, Abney, Neal, he has served on several Oklahoma and Tulsa County Bar committees … and as trustee for the Oklahoma Bar Foundation." <u>ABC-AGENCIES, BOARDS, AND COMMISSIONS,</u> CHAPTER JUDICIAL BRANCH, PAGE 49, PARAGRAPH ON JUDGE CHAPEL. **(P.C.O.R. 193)**.

## **CONCLUSION**

Petitioner request this Court to grant evidentiary hearings motions. Petitioner prays that the Court issue the writ of *habeas corpus* so that justice will be served. Petitioner prays that this petition will issue as soon as possible.

So prayed.

Respectfully and truly submitted,

Gordon Todd Skinner, *ordo lux*

INMATE NO. 556865
Joseph Harp Correctional Ctr.
P.O. Box 548
Lexington, OK 73051

AO 241
(Rev. 10/07)

Page 16

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Therefore, petitioner asks that the Court grant the following relief:

or any other relief to which petitioner may be entitled.

_____

Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for

Writ of Habeas Corpus was placed in the prison mailing system on _____ (month, date, year).

Executed (signed) on  6/17/11  (date).

_____

Signature of Petitioner

If the person signing is not petitioner, state relationship to petitioner and explain why petitioner is not signing this petition.