**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GORDON TODD SKINNER,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| v. | ) | **Case No. 11-CV-0382-CVE-TLW** |
| | ) | |
| **MIKE ADDISON, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## OPINION AND ORDER

This is a 28 U.S.C. § 2254 habeas corpus action. Petitioner is a state inmate appearing pro

se.  Before the Court is Petitioner's petition for habeas corpus relief (Dkt. # 1). In support of his

petition, Petitioner provided an extensive record. See Dkt. # 20 (Petitioner's "Lodgment 'A'").

Respondent filed a response (Dkt. # 24), and provided the transcripts from Petitioner's trial (Dkt.

# 26).  Petitioner filed a reply (Dkt. # 42) and an amended reply (Dkt. # 48). On August 13, 2012,

Petitioner filed a petition for writ of mandamus at the Tenth Circuit Court of Appeals, Case No. 12-

5131. See Dkt. # 75.  Apparently in anticipation of the denial of his habeas petition, he filed a

motion and amended motion for certificate of appealability (Dkt. ## 76, 78). He filed a motion to

increase page limit on September 12, 2012 (Dkt. # 77).  For the reasons discussed below, the Court

finds the petition shall be denied.  Petitioner's motion and amended motion for certificate of

appealability shall be denied, and his motion to increase page limit is moot.

### *BACKGROUND*

A.     **Factual Background**

Pursuant to 28 U.S.C. § 2254(e)(1), the historical facts found by the state court are presumed

correct. Following review of the record, including the trial transcripts and other materials submitted

by the parties, the Court finds the factual summary by the OCCA in its direct appeal opinion is

adequate and accurate. See Skinner v. State, 210 P.3d 840, 841-46 (Okla. Crim. App. 2009). To summarize, Petitioner Gordon Todd Skinner and his co-defendants, Krystle Ann Cole and William Earnest Hauck, kidnapped and tortured eighteen-year-old Brandon Green beginning July 3, 2003, at the Doubletree Hotel located in downtown Tulsa, and ending July 11, 2003, in a field outside of Texas City, Texas. Petitioner had married Krystle Cole on June 27, 2003, or a few days before the incidents underlying these criminal charges began to unfold.  From July 3, 2003, through July 11, 2003, Petitioner gave Green multiple injections of unknown substances, some in Green's penis and testicles, others to render him unconscious. Part of the time, Green was bound and gagged with duct tape. Trial testimony by co-defendants Hauck and Cole suggested that Petitioner's treatment of Green was motivated by jealousy of Green's relationship with Cole. For example, Hauck testified that when he asked Petitioner "what was going on" with Green, Petitioner answered, "I'm getting even. I don't let anybody sleep with my wife." See Dkt. # 26-5, Tr. Trans. at 692. Petitioner told Hauck he had injected Green's penis with a substance that would cause Green's genitals "to shrivel up and fall off."  Id. at 696. Hauck saw Petitioner punch Green in the genitals, grab Green by the base of his genitals, lift him up and drop him, and pull out a syringe and inject it into the side of Green's penis. Id. at 692-95. Petitioner also grabbed a phone cord and told Hauck he had wrapped it "around Green's dick and jerked it up real hard until I heard the cartilage snap." Id. at 698. Hauck described Green's genitals as extremely swollen and discolored.  Id. at 692-93. Cole also testified at trial and described Petitioner's treatment of Green and Green's resulting condition.  See Dkt. # 26-3, Tr. Trans. at 232-278.  Her testimony was, in large part, consistent with Hauck's.

On July 8, 2003, the group checked out of the Doubletree Hotel, and traveled to Houston, Texas. Green remained nearly unconscious during the trip.  On July 11, 2003, after Petitioner had

again injected Green, Hauck and Cole dumped an unconscious, "completely incoherent," Green in a field outside of Texas City, Texas. See Dkt. # 26-5, Tr. Trans. at 732. "Green's naked and nearly lifeless body" was found by a law enforcement officer along a highway outside of Texas City. Skinner, 210 P.3d at 846.  He was taken to a local hospital where he spent about one week. After he was released from the hospital, he was unable to walk and remained in a wheelchair for months. Id.

B.    **Procedural history**

On September 11, 2003, in Tulsa County District Court, Case No. CF-2003-4213, Petitioner was charged with Conspiracy to Commit Kidnapping, AFCF (Count I), Kidnapping, AFCF (Count II), and Assault and Battery With a Dangerous Weapon, AFCF (Count III). Co-defendants Hauck and Cole were also charged in Counts I and II.[1]  At the conclusion of a jury trial, Petitioner was convicted on all three counts.  On July 6, 2006, Petitioner was sentenced in accordance with the jury's recommendation to thirty (30) years imprisonment and a $10,000 fine on Count I, sixty (60) years imprisonment and a $10,000 fine on Count II, and life imprisonment and a $10,000 fine on Count III, with the sentences ordered to be served consecutively.  At trial, Petitioner was represented by attorneys Patrick Adams and Thomas A. Mortensen.

Petitioner appealed his convictions to the OCCA.  Represented by attorney Gloyd L. McCoy, he raised seven (7) propositions of error:

---

[1]    On November 16, 2006, co-defendant Hauck was convicted on his plea of guilty of Accessory After the Fact Kidnapping (Count II); the Count I charge of conspiracy was dismissed.  On that date, Hauck was sentenced to ten (10) years, suspended. On November 15, 2006, co-defendant Cole entered a plea of nolo contendere to Accessory After the Fact Kidnapping (Count II); the Count I charge of conspiracy was dismissed. On March 26, 2007, Cole received a deferred sentence.  See www.oscn.net.

Proposition I:       Mr. Skinner's convictions were obtained in violation of the terms of an immunity agreement binding on the State of Oklahoma; accordingly, Mr. Skinner's convictions must be dismissed.

Proposition II:      Mr. Skinner is entitled to a new trial due to the discovery of important evidence that had not been previously disclosed to the defendant.

Proposition III:     Mr. Skinner's conviction[s] must be vacated as they was [sic] obtained in violation of the Interstate Detainer Act.

Proposition IV:      Improper prosecutorial comment deprived Mr. Skinner of a fair trial.

Proposition V:       The trial court denied Mr. Skinner a fair second-stage proceeding when it did not explain to the jury the process of sentencing "concurrent or consecutively" after the jury requested such information in a note to the court.

Proposition VI:      The sentences in this case were established as a result of an improper prior conviction being admitted into evidence; alternatively, the State of Oklahoma failed to prove with sufficient evidence that Mr. Skinner had a valid prior conviction.

Proposition VII:     The trial court failed to give an appropriate instruction on the 85% Rule.

(Dkt. # 20-6, App. F at 26-86).  In a published opinion, filed June 11, 2009, in Case No. F-2007-1101 (Dkt. # 20-9, App. I; Skinner v. State, 210 P.3d 840 (Okla. Crim. App. 2009)), the OCCA rejected all claims and affirmed Petitioner's convictions and sentences.  However, the case was remanded for clarification of the Judgment and Sentence documents to state clearly that each of Petitioner's three convictions was found by the jury to be "'After Former Conviction of a Felony' (AFCF)."  See Skinner, 210 P.3d at 855.

On September 4, 2009, Petitioner filed a petition for writ of certiorari at the United States Supreme Court.  See Dkt. # 20-10, App. J; Dkt. # 20-12, App. L.  Thereafter, on October 5, 2009, he filed an amended petition for writ of certiorari.  See Dkt. # 20-11, App. K.  The Supreme Court

4

denied the petition on November 30, 2009.  See Dkt. # 20-12, App. L.  Petitioner's requests for

reconsideration were denied on December 24, 2009, and January 25, 2010.  Id.

On October 6, 2010, Petitioner filed an application for post-conviction relief in the state

district court. See Dkt. # 20-13, App. M. He raised the following seventeen (17) grounds of error:

1.   Ineffective assistance of appellate counsel.  Appellate counsel Gloyd McCoy lied and
stated he raised numerous propositions that were not raised.  McCoy was dishonest,
deceitful, uncommunicative and unresponsive, and thoroughly incompetent.
Petitioner fired McCoy, hired another lawyer, but then was forced to rely on
incompetent counsel because OCCA would not allow Petitioner to fire McCoy, hire
a new attorney, or proceed Pro Se.

2.   Due process violations. The U.S. Attorney's Office, via the Federal Public Defenders
Office, interfered with Petitioner's paid attorneys by calling the Head Public
Defender and having him call Kevin Adams, who then was conflicted from the case
over Petitioner's objection. Judge McAllister covered this up. The entire matter went
before the 10th Circuit.

3.   Kastigar[2] immunity violation. Petitioner was denied the protection against self-
incrimination guaranteed by the Fifth Amendment to the U.S. Constitution, the
United States Code, and the Oklahoma Constitution in Article II § 21.

4.   Due process violation. The State of Oklahoma failed to turn over FBI reports of FBI
investigation into alleged kidnapping AND failed to turn over Department of Interior
reports of their investigation.

5.   Due process violation.  The State of Oklahoma failed to turn over an alleged
kidnapping complaint in which the alleged victim and Krystle Cole admitted they
had made up the entire case and lied in sworn affidavits.  This withheld evidence was
exculpatory and could have been used by trial counsel to proved Petitioner's actual
innocence.

---

[2]   Kastigar v. United States, 406 U.S. 441, 460 (1972) (holding that in any subsequent criminal
prosecution of a person who has been granted immunity to testify, the prosecution has the
affirmative duty to prove that the evidence it proposes to use is derived from a legitimate
source wholly independent of the compelled testimony).

6.      Sixth Amendment violation. The Tulsa U.S. Attorney's Office quashed Petitioner's subpoena of TFO Doug Kidwell (DEA) and refused petitioner's 28 CFR § 16.21 et seq. request.

7.      Due process violation. Judge McAllister ruled that William Hauck did not have to disclose to the Jury his prior sex conviction against a minor. The trial court's ruling was an abuse of discretion.

8.      Illegal enhancement of sentence. Petitioner was illegally sentenced in second phase using stale after former conviction from New Jersey. The federal misdemeanor was not a crime of moral turpitude and thus could not be used to enhance the sentence.

9.      Brady[3] violation/prosecutorial misconduct. Alleged victim Brandon Green was allowed by trial judge to ramble extensively and prejudicially about a "collapsed lung" and other matters devoid of evidence and lacking any relevance to the case, a clear violation of Petitioner's rights under Brady v. Maryland.

10.     Due process/prosecutorial misconduct violation. This proposition deals with the issue of perjured testimony used to convict Petitioner. Prosecutors tried to clean up William Hauck's perjury using prior inconsistent statements method, but this does not relieve them of their burden to inform the jury about perjured testimony.

11.     Due process violation/prosecutorial misconduct. A full transcript of video testimony of Brandon Green offered at trial was requested by Petitioner, but was never provided by prosecutors. Prior to trial, a working video was never given to Petitioner as part of discovery.

12.     Due process/prosecutorial and police misconduct. Petitioner repeatedly asked for phone records that would show no communication between Hauck and Skinner during the time frame of the alleged events -- which is not disputed-- and that Hauck did have communication with parties undisclosed at rial, such as Kristi Roberts, the DEA, and possibly the FBI.

13.     Due process/Brady violation. DA's office failed to turn over exculpatory testimony of Brandon Green at Krystle Cole's PSI. This is an actual innocence claim.

14.     Statutory violation. Skinner's conviction was obtained in violation of the Interstate Agreement on Detainers Act (IADA).

---

[3]     Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution").

15.     Due process/prosecutorial misconduct violation. Skinner's conviction was obtained as a result of prosecutorial misconduct, an issue raised as Proposition IV in Defendant's direct appeal.

16.     Due process/prosecutorial misconduct violation. Prosecutors failed to disclose to Petitioner before trial an alleged "reverse sting operation," in which Hauck offered to sell his testimony to Petitioner. This would have gone towards proving Petitioner's actual innocence because it would strike at the credibility of Hauck and Detective Gene Watkins.

17.     Due process violations.  Petitioner's conviction was obtained by abuse of discretion by State Courts.  Decisions of the State Courts, including evidentiary rulings, were so arbitrary and capricious as to constitute an independent due process violation.

Id. The trial court denied post-conviction relief on November 16, 2010.  See Dkt. # 24, Ex. 1.

Petitioner appealed. By order filed April 25, 2011, in Case No. PC-2010-1178, the OCCA affirmed

the denial of post-conviction relief. See Dkt. # 20-15, App. O.

Petitioner filed his federal habeas corpus petition on June 17, 2011 (Dkt. # 1). He also filed

a supporting brief (Dkt. # 2), an amended supporting brief (Dkt. # 19), and supporting exhibits (Dkt.

# 20).  Petitioner raises twenty-three (23) grounds of error, as follows:

Ground 1:     Fifth Amendment, Clause III, and Kastigar immunity violation. By failing to recognize "subsequent meetings" aspect of Petitioner's Immunity Contract and fact that Petitioner met with the DEA on July 8, 2003, after the alleged events of kidnapping and assault occurred.

Ground 2:     The investigation, prosecution, and conviction of Petitioner violated federal law title 18 U.S.C. § 6002.  All of the State's evidence can be traced back to the derivative use of Petitioner's immunized statements: to his disclosure regarding Krystle Cole and his introduction of Cole to DEA agents. State courts have failed to hold the government to this burden as well as the requirements of Elkins, where as in the instant case agents of the federal government sought to circumvent restrictions the law placed on themselves by handing information, in this case protected by an immunity agreement, to state officers.

7

Ground 3:      Petitioner's immunity contract is binding on the State of Oklahoma and the federal government, and his prosecution in the instant case violated that agreement.  What distinguishes this Ground from other like claims is that the United States government used the State of Oklahoma as a "front man," therefore separate sovereign theory should not apply.

Ground 4:      Ineffective assistance of appellate counsel. Appellate counsel Gloyd McCoy lied and stated he raised numerous propositions that were not raised.  McCoy was dishonest, deceitful, uncommunicative and unresponsive, and thoroughly incompetent. Petitioner fired McCoy, hired another lawyer, but then was forced to rely on incompetent counsel because OCCA would not allow Petitioner to fire McCoy, hire a new attorney, or proceed Pro Se.

Ground 5:      Ineffective assistance of appellate counsel to correctly articulate subsequent meetings and July 8th meeting in the reply brief to Oklahoma Court of Criminal Appeals Kastigar immunity violation and Fifth Amendment violation.

Ground 6:      Ineffective assistance of appellate counsel in failure to competently articulate a constitutional due process Brady violation.

Ground 7:      Ineffective assistance of appellate counsel in failure to competently articulate a critical due process and prosecutorial misconduct violation.  This issue was raised as Proposition IV in Petitioner's Direct Appeal.

Ground 8:      Petitioner's conviction was obtained by abuse of discretion by state courts. Decisions of the state courts, including evidentiary rulings, were so arbitrary and capricious as to constitute an independent due process violation.

Ground 9:      The district court erred by abdicating its authority by copying verbatim (including typographic errors) much of the district attorney's response to Petitioner's application for post-conviction relief.

Ground 10:     The Oklahoma state rules and appeals process constitutes a fundamental procedural due process violation.

Ground 11:     The district court erred by allowing the district attorney (a respondent) to answer and reply to Petitioner's application for post-conviction relief.

Ground 12:     Ineffective assistance of appellate counsel in failure to raise government-induced ineffective assistance of trial counsel.

Ground 13:     Ineffective assistance of appellate counsel in failure to raise due process violations as per <u>Brady v. Maryland</u>, 378 U.S. 83 (1963). The State of Oklahoma failed to turn over FBI reports of FBI investigation into alleged kidnapping AND failed to turn over Department of Interior reports of their investigation.

Ground 14:     Ineffective assistance of appellate counsel in failure to raise due process violations as per <u>Brady v. Maryland</u>, 378 U.S. 83 (1963). The State of Oklahoma failed to turn over an alleged kidnapping complaint in which the alleged victim and Krystle Cole admitted they had made up the entire case and lied in sworn affidavits. This withheld evidence was exculpatory and could have been used by trial counsel to prove Petitioner's actual innocence and is a "dead bang winner" claim.

Ground 15:     Ineffective assistance of appellate counsel in failure to raise the issue that Petitioner was denied his right to have compulsory process for obtaining witnesses in his favor, as guaranteed by the 6th Amendment to the U.S. Constitution. The Tulsa U.S. Attorney's Office quashed Petitioner's subpoena of TFO Doug Kidwell (DEA) and refused petitioner's 28 CFR § 16.21 et seq. request.

Ground 16:     Ineffective assistance of appellate counsel in failure to raise the issue that Petitioner was denied his right to be confronted by the witnesses against him, and denied his right to due process as guaranteed by the 5th and 6th Amendments to the U.S. Constitution.

Ground 17:     Ineffective assistance of appellate counsel in failure to competently raise or articulate the illegal enhancement of Petitioner's sentence.

Ground 18:     Ineffective assistance of appellate counsel in failure to raise a critical <u>Brady v. Maryland</u> prosecutorial misconduct issue. Alleged victim Brandon Green was allowed by trial judge to ramble extensively and prejudicially about a "collapsed lung" and other matters devoid of evidence and lacking any relevance to the case, a clear violation of Petitioner's rights under <u>Brady v. Maryland</u>.

Ground 19:     Ineffective assistance of appellate counsel in failure to raise a critical due process and prosecutorial misconduct violation. This proposition deals with the issue of perjured testimony used to convict Petitioner. Prosecutors tried to sanitize William Hauck's perjury using prior inconsistent statements method, but this does not relieve them of their burden to inform the jury about perjured testimony.

Ground 20:    Ineffective assistance of appellate counsel in failure to raise critical due process and prosecutorial and police misconduct issues. Petitioner repeatedly asked for phone records that would show no communication between Hauck and Skinner during the time frame of the alleged events -- which is not disputed-- and that Hauck did have communication with parties undisclosed at trial, such as Kristi Roberts, the DEA, and possibly the FBI.

Ground 21:    Ineffective assistance of appellate counsel in failure to competently articulate a critical statutory violation.  Petitioner's conviction was obtained in violation of the Interstate Agreement on Detainer Act (IADA).

Ground 22:    Ineffective assistance of appellate counsel in failure to raise a critical due process and prosecutorial misconduct violation. Prosecutors failed to disclose to Petitioner before trial an alleged "reverse sting operation," in which Hauck offered to sell his testimony to Petitioner. This would have gone towards proving Petitioner's actual innocence because it would strike at the credibility of Hauck and Detective Gene Watkins.

Ground 23:    Ineffective assistance of appellate counsel in failure to raise critical due process violations. State courts made arbitrary and capricious decisions, which denied due process of law and a fair trial.

See Dkt. # 1.  In response to the petition, Respondent argues Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d) and that some claims are not cognizable in this habeas corpus action.  See Dkt. # 24.

## *ANALYSIS*

### A.    **Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b) and (c).  See Rose v. Lundy, 455 U.S. 509, 510 (1982). Petitioner fairly presented the substance of his claims to the OCCA on direct appeal and post-conviction.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds that Petitioner is not entitled to an evidentiary hearing.  See Williams v. Taylor, 529 U.S. 420 (2000).

**B.      Claims adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 402 (2000); Neill v. Gibson, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.  See Bell v. Cone, 535 U.S. 685, 699 (2002); Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).  Furthermore, the "determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

Petitioner presented his immunity claims to the OCCA on direct appeal.  In addition, Petitioner presented some of his ineffective assistance of appellate counsel claims to the OCCA on post-conviction appeal.  Petitioner also presented his challenges to state court procedures to the OCCA on post-conviction appeal. To the extent Petitioner's claims are cognizable in this federal habeas corpus proceeding, the claims shall be reviewed pursuant to § 2254(d).

11

1.       **Claims regarding immunity (grounds 1, 2, and 3)**

In grounds 1, 2, and 3, Petitioner claims that his prosecution by the State of Oklahoma violated an immunity agreement he had with the federal government in a prior, unrelated case prosecuted in the United States District Court for the District of Kansas, Case No. 00-CR-40104-RDR.  In that case, Petitioner served as a confidential informant and was granted immunity in a prosecution charging co-defendants Clyde Apperson and William Leonard Pickard with (1) conspiracy to manufacture, distribute and dispense 10 grams or more of a mixture or substance containing a detectable amount of lysergic acid diethylamide (LSD), and (2) possession with intent to distribute or dispense 10 grams or more of a mixture or substance containing a detectable amount of LSD.  Both Apperson and Pickard were found guilty as charged.  Apperson was sentenced to 360 months imprisonment; Pickard was sentenced to life imprisonment. Petitioner now claims that because of the grant of immunity in that federal case, he was denied his Fifth Amendment rights in the instant case. He also claims that his prosecution in this case violated 18 U.S.C. § 6002, and that the federal immunity agreement reached in D. Kan. Case No. 00-CR-40104-RDR was binding on the State of Oklahoma.  Petitioner focuses his claims on <u>Kastigar v. United States</u>, 406 U.S. 441 (1972).  He raised these claims on direct appeal where the OCCA carefully examined the question of immunity but denied relief, concluding that "Skinner's prior immunity agreements with the federal government did not in any way prohibit or limit the State of Oklahoma's ability to investigate and prosecute him for his violent and sadistic actions against Brandon Green in July of 2003." <u>Skinner</u>, 210 P.3d at 851 (footnote omitted). Furthermore, the OCCA ruled that "[b]ecause the crimes that Skinner was charged with committing in the current case were, without question,

12

committed entirely after his grants of immunity and were also totally unrelated to his prior assistance and testimony, Kastigar immunity is simply not an issue in the current case." Id.

As a preliminary matter, the Court rejects Petitioner's argument that he is entitled to de novo review because the OCCA failed to address his argument that the State of Oklahoma was bound by the federal immunity agreement. Even if the OCCA did not provide a specific analysis of one of Petitioner's arguments, the OCCA's denial of relief on Petitioner's immunity claims serves to imply denial of relief on all of the subclaims. Therefore, this Court will apply the deferential standard of 28 U.S.C. § 2254(d). Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

Petitioner is not entitled to habeas relief on grounds 1, 2, and 3 unless he demonstrates that the OCCA's adjudication of his claims on direct appeal "was contrary to, or an unreasonable application of, Federal law as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). He has not done so. Nor has Petitioner demonstrated that the OCCA's adjudication was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). Petitioner makes much of his allegation that the OCCA failed to consider that he met with DEA agents on July 8, 2003, the day Skinner and his group checked out of the Doubletree Hotel and traveled to Texas. See Dkt. # 48. He also emphasizes that his immunity contract contained a "subsequent meetings" clause. Id. However, those facts do not alter the conclusion that, because Petitioner's crimes in the instant case were "committed entirely after his grants of immunity and were also totally unrelated to his prior assistance and testimony," Kastigar immunity "is simply not an issue" in this case. Skinner, 210 P.3d at 851. Petitioner fails to acknowledge that he was convicted of Conspiracy to Commit Kidnapping, Kidnapping, and Assault and Battery With a Dangerous Weapon. He has failed to demonstrate that those crimes are

13

connected to his assistance and testimony offered in the prior prosecution for drugs and money laundering or to the "subsequent meeting" with DEA officers on July 8, 2003. Clearly, the grant of federal immunity in the drug and money laundering case did not provide a free pass to Petitioner to commit future unrelated crimes without fear of prosecution. Petitioner goes to great effort to convince the Court that, because some of the witnesses against him had dealings with DEA agents in the drug and money laundering case, he should be immune from prosecution in the instant case. That argument is an overbroad reading of <u>Kastigar</u> and is rejected by this Court. Petitioner has failed to carry his burden of demonstrating entitlement to habeas corpus relief. 28 U.S.C. § 2254)(d). Habeas relief shall be denied on grounds 1, 2, and 3.

### 2.   Ineffective assistance of appellate counsel (grounds 4-7 and 12-23)

Petitioner identifies 16 separate instances of allegedly ineffective assistance provided by appellate counsel, Gloyd McCoy.[4] These claims were presented to the OCCA on post-conviction appeal. <u>See</u> Dkt. # 20-14, App. N. In resolving Petitioner's claims of ineffective assistance of appellate counsel on post-conviction appeal, the OCCA found as follows:

> In analyzing the performance of Petitioner's appellate counsel, it must be noted that Petitioner's jury convicted him based upon ample, detailed, compelling and consistent testimony given by multiple witnesses. *Skinner*, 2009 OK CR 19 at ¶¶2-18, 210 P.3d at 841-46. Petitioner's appellate counsel raised cogent and complicated issues in his direct appeal. Lack of success is not the proper measure for

---

[4]   On September 21, 2010, or approximately two (2) years after the submission of Petitioner's direct appeal brief-in-chief, the Oklahoma Supreme Court entered its order suspending Mr. McCoy from the practice of law for two years and one day. <u>See</u> 240 P.3d 675 (Okla. 2010) (finding that suspension from the practice of law was warranted based on Mr. McCoy's acknowledgment of misconduct, including dishonesty, fraud, deceit, or misrepresentation; incompetence including accepting cases while under a disability; lack of diligence; failure to communicate; mishandling of funds; and the filing of untimely responses to grievance inquiries, even though Mr. McCoy suffered from medical issues, and debilitating depression coupled with an attention deficit disorder, which contributed to his actions).

determining the adequacy of legal representation, especially in light of the facts of this case. *Taylor v. State*, 1982 OK CR 24, ¶ 9, 659 P.2d 362, 365. In this post-conviction proceeding, Petitioner merely gestures at propositions of error, but does not explain or establish how any of the alleged errors could have changed the outcome of Appellant's appeal. *Strickland v. Washington*, 466 U.S. 668, 687, 694.

We disagree with Petitioner's depiction of some of his propositions as dead-bang winners. Petitioner claims his trial counsel was ineffective for failing to inform the jury of a previous fictitious kidnapping case, but he offers no documentation concerning the facts of the previous case or proof that it would have affected this current case. Petitioner claims his trial counsel was ineffective for failing to inform the jury that the New Jersey felony used to enhance his sentence was more than ten years old. Petitioner has included documentation to support this assertion, but doesn't establish it was presented to the District Court. The documentation is an order for early termination of his *probation* in the New Jersey case, but it does not reflect that execution of his sentence was terminated early. 21 O.S.Supp.2002, § 51.1. Petitioner also claims his trial counsel was ineffective for failing to inform his jury that the victim was on pretrial bond and lied about being in Galveston; that the FBI declined to pursue interstate kidnapping charges; and that prosecutors failed to turn over phone records. Again, Petitioner offers no documentation or evidence supporting these assertions and hasn't established that the outcome of his appeal would have or should have been different. Thus, he hasn't established actual ineffectiveness of his appellate counsel, and he hasn't established factual innocence. *Strickland*, *supra*. Petitioner hasn't established sufficient reason to allow his current propositions of error to be the basis of this post-conviction application. 22 O.S.2001, § 1086.

(Dkt. # 20-15, App. O at 4-5).

Petitioner is not entitled to habeas corpus relief unless he demonstrates that the OCCA's adjudication was contrary to, or an unreasonable application of, Supreme Court law. 28 U.S.C. § 2254(d). This Court's review of the OCCA's decision on ineffective assistance of counsel claims is "doubly deferential. " Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011) (noting that a habeas court must take a "highly deferential" look at counsel's performance under Strickland v. Washington, 466 U.S. 668 (1984), and through the "deferential" lens of § 2254(d)). In order to establish that trial counsel was constitutionally ineffective, Petitioner must satisfy both prongs of the test established in Strickland. Under Strickland, Petitioner must show that his counsel's

performance was deficient and that the deficient performance was prejudicial. Id. at 687; Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). He can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, Petitioner must show that this deficient performance prejudiced the defense, to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Sallahdin v. Gibson, 275 F.3d 1211, 1235 (10th Cir. 2002); Boyd v. Ward, 179 F.3d 904, 914 (10th Cir. 1999).

When evaluating a claim of ineffective assistance of appellate counsel, this Court applies the Strickland two-pronged standard used for general claims of ineffective assistance of trial counsel. See United States v. Cook, 45 F.3d 388, 392 (10th Cir. 1995), abrogated on other grounds by Neill v. Gibson, 278 F.3d 1044 (10th Cir. 2001) (rejecting "dead bang winner" standard). When a habeas petitioner alleges that his appellate counsel rendered ineffective assistance by failing to raise an issue on direct appeal, the Court first examines the merits of the omitted issue. Hawkins v. Hannigan, 185 F.3d 1146, 1152 (10th Cir. 1999). If the omitted issue is meritless, then counsel's failure to raise it

does not amount to constitutionally ineffective assistance.  Id.; see also Parker v. Champion, 148 F.3d 1219, 1221 (10th Cir. 1998) (citing Cook, 45 F.3d at 392-93).

Although Petitioner characterizes the OCCA's ruling affirming the state district court's denial of post-conviction relief on his claims of ineffective assistance of appellate counsel as "pure unadulterated balderdash," see Dkt. # 48 at 49, this Court nonetheless finds Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2254(d).  As a preliminary matter, the Court notes that Petitioner's claims of ineffective assistance of appellate counsel as identified in the petition (Dkt. # 1) are conclusory and speculative.  He failed to provide factual support for many of his claims until he filed his reply (Dkt. # 42), as amended (Dkt. # 48).  As a result, Respondent has not had an opportunity to respond to the factual bases identified by Petitioner in his amended reply.  However, even presuming that the facts identified in the amended reply are true, the Court finds that Petitioner has failed to demonstrate that he is entitled to habeas corpus relief on his claims of ineffective assistance of appellate counsel.  The Court shall address each of the claims of ineffective assistance of appellate counsel raised by Petitioner.

### a.      Failure to communicate promptly and honestly (ground 4)

Petitioner first complains in ground 4 that appellate counsel, Gloyd McCoy, was "dishonest, deceitful, uncommunicative and unresponsive, and thoroughly incompetent."  See Dkt. # 1. Petitioner raised this claim on post-conviction appeal and, in support of his claim, provided, *inter alia*, records of correspondence with Mr. McCoy. While that record clearly reflects Petitioner's frustration with the representation provided by Mr. McCoy, nothing provided by Petitioner demonstrates that the result of his direct appeal would have been different had Mr. McCoy acted and communicated more promptly and accurately. As noted by the OCCA, Petitioner's jury convicted

him "based upon ample, detailed, compelling and consistent testimony given by multiple witnesses." See Dkt. # 20-15, App. O (citing Skinner, 210 P.3d at 841-46). In light of the facts of this case, the Court finds that Petitioner has failed to satisfy the prejudice prong of the Strickland standard.

### b. Failure to present facts concerning the July 8, 2003, meeting (ground 5)

Next, Petitioner complains that appellate counsel failed to present facts relating to subsequent meetings he had with DEA agents, specifically the meeting held on July 8, 2003. However, as discussed above, Petitioner has failed to connect the crimes he committed in this case to the information he provided during the drug and money laundering case or to the "subsequent meetings," as relevant to the prior criminal case. He has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

### c. Failure to articulate a Brady violation (ground 6)

In ground 6, Petitioner cites Brady and alleges that appellate counsel failed to articulate competently a claim that the DA's office withheld "exculpatory testimony of Brandon Green at Krystle Cole's PSI." See Dkt. # 1 at 88. In resolving Petitioner's direct appeal, the OCCA discussed Petitioner's request for a new trial based on the discovery of "new evidence." The OCCA described the new "non-disclosed" evidence as information "from the presentence investigation report in Krystle Cole's case." See Skinner, 210 P.3d at 852 n.69. According to the OCCA, the information related "to the extent of Cole's involvement in Green's ordeal," and "certainly would not have made any difference in Skinner's trial." Id.

In Strickler v. Greene, 527 U.S. 263 (1999), the Supreme Court explained that "[t]here are three components of a true Brady violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been

suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Id.</u> at 281-82. The information identified by Petitioner satisfies none of the three components. In addition, the OCCA's determination, that the information relied on by Petitioner concerned the extent of Cole's involvement in Green's ordeal, is a finding of fact and is entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1). Petitioner provides nothing, certainly not clear and convincing evidence, to rebut the presumption of correctness. Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

### d.    Failure to raise a claim of prosecutorial misconduct (ground 7)

In ground 7, Petitioner asserts that appellate counsel provided ineffective assistance in failing to raise a claim of prosecutorial misconduct. In his petition, he cites only to proposition IV of his direct appeal brief. <u>See</u> Dkt. # 1 at 89. Apparently, it is Petitioner's contention that, since the OCCA denied relief on direct appeal, the claim was raised inadequately. However, he fails to offer any explanation for his belief that the claim was inadequately presented. Conclusory allegations by habeas petitioners are insufficient to obtain habeas relief. <u>Humphreys v. Gibson</u>, 261 F.3d 1016, 1022 (10th Cir. 2001). The Court has carefully reviewed the trial record. Nothing suggests that appellate counsel could have articulated a claim of prosecutorial misconduct that would have

entitled Petitioner to relief on direct appeal.[5]  Petitioner has not demonstrated that the result of his

appeal would have been different had appellate counsel raised this claim.

> **e.** **Failure to raise claim of "government-induced ineffective assistance of trial counsel" (ground 12)**

In ground 12, Petitioner argues that appellate counsel provided ineffective assistance in

failing to argue that,

> The U.S. Attorney's Office, via the Federal Public Defenders Office, interfered with Petitioner's paid attorneys by calling the Head Public Defender and having him call Kevin Adams, who them [sic] was conflicted from the case over Petitioner's objections. Judge McAllister covered this up. The entire matter went before the 10th Circuit.

(Dkt. # 1 at 97).

As part of his response, Respondent provides parts of the Original Record from state court.

Included in that record is the motion to withdraw filed by Petitioner's attorney, Kevin D. Adams.

See Dkt. # 24-2, O.R. at 366. Mr. Adams sought leave to withdraw, citing "[a]n irreconcilable

conflict of interest" between himself and Petitioner.  He declined to reveal the nature of the conflict,

citing confidential attorney-client communication.  Id.  A subsequent order, entered by the OCCA

on June 9, 2006, recites that the motion to withdraw was granted on August 30, 2005.  See Dkt. #

24-2, O.R. at 433-37.  In that order, the OCCA also denied Petitioner's motions to suspend ten-day

---

[5]       In his amended reply (Dkt. # 48), Petitioner states for the first time that appellate counsel provided ineffective assistance in failing to raise a claim of prosecutorial misconduct based on the prosecutor's statement during opening argument that Petitioner manufactured hallucinogenic drugs. See Dkt. # 26-3, Tr. Trans. at 204.  Defense counsel promptly objected and moved for a mistrial. Id. The trial judge denied the request for a mistrial, but admonished the jury to disregard the prosecutor's statement. Id. at 205-06.  Under the facts of this case, the Court finds that Petitioner cannot demonstrate that the result of his appeal would have been different had appellate counsel raised this claim of prosecutorial misconduct.

rule and for a stay of proceedings, and his emergency petition for writ of prohibition and/or mandamus. Id.

In this habeas action, Petitioner avers that the withdrawal of his attorney "caused irreparable harm" because he "was unable to file writs to higher courts." See Dkt. # 1 at 97. However, he fails to explain how or when or where he was unable to file a writ. Furthermore, as evidenced by the order entered by the OCCA, Petitioner did file a motion for writ of prohibition and/or mandamus at the OCCA. The Court recognizes that, in his amended reply (Dkt. # 48), Petitioner makes additional conclusory claims regarding his representation at trial.[6] Nonetheless, in light of the evidence presented at trial, Petitioner fails to demonstrate that the result of his appeal would have been different had appellate counsel raised this claim.

### f.   Failure to raise a __Brady__ violation based on withheld records (ground 13)

In ground 13 of his petition, Petitioner alleges that appellate counsel provided ineffective assistance when he failed to allege that the prosecution withheld FBI and Department of Interior reports of an alleged kidnapping. See Dkt. # 1 at 98. However, Petitioner provides no factual support for this claim. It is conclusory and cannot provide a basis for habeas corpus relief.[7] As with Petitioner's other claims of ineffective assistance of appellate counsel, he has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

---

[6]   In his amended reply, Petitioner states, "[t]he criminal act by the U.S. Attorney's Office caused extreme harm to Petitioner as J. Mortensen, having an alternate agenda, did a completely inadequate job." (Dkt. # 48 at 58). However, Petitioner fails to explain his attorney's "alternate agenda" or how his representation was inadequate.

[7]   In his amended reply (Dkt. # 48), Petitioner makes the statement that, "[t]he FBI did a joint investigation with Drug Enforcement Administration (DEA) and did not pursue the matter apparently finding no grounds for charges." That allegation is conclusory and based on speculation and cannot provide a basis for habeas corpus relief.

> **g.**     **Failure to raise a <u>Brady</u> violation based on withheld exculpatory witness statements (ground 14)**

Next, Petitioner identifies another <u>Brady</u> violation omitted by appellate counsel on direct appeal.  In his application for post-conviction relief, Petitioner cited Krystle Cole's testimony at the <u>Kastigar</u> hearing held June 12, 2006, or two (2) days before the beginning of Petitioner's trial, as factual support for the alleged <u>Brady</u> violation.  <u>See</u> Dkt. # 20-13, App. M at 17. The <u>Kastigar</u> hearing transcript is part of the record in this case.  <u>See</u> Dkt. # 20-16, App. P.  At that hearing, Ms. Cole testified, on cross-examination by defense counsel, that she and Brandon Green signed affidavits stating that they had lied about the kidnapping at issue in this case because they had been threatened by Petitioner.  <u>See</u> <u>id.</u> at 6.  That testimony, elicited by defense counsel, defeats Petitioner's claim that the witness statements were withheld from the defense.  In addition, Cole clearly testified that the  recantations by herself and Green were coerced by Petitioner.  Therefore, they were not voluntarily given and cannot be characterized as "exculpatory."  This claim lacks merit.  Appellate counsel did not provide ineffective assistance in failing to raise this claim on direct appeal.

> **h.**     **Failure to raise Sixth Amendment compulsory process claim (ground 15)**

As proposition 15, Petitioner claims that appellate counsel provided ineffective assistance in failing to claim that Petitioner had been denied his right to have compulsory process.  <u>See</u> Dkt. # 1 at 100.  Specifically, Petitioner complains that his request to subpoena DEA Agent Doug Kidwell was denied and that he was denied access to Kristi Roberts in a <u>Kastigar</u> hearing. As to Petitioner's claim concerning Agent Kidwell, the record reflects that Petitioner subpoenaed him to appear at the preliminary hearing.  <u>See</u> Dkt. # 20-30, App. DD at 135.  The United States Attorney filed a motion to quash, <u>id.</u> at 128-132, arguing that defense counsel had not complied with the

22

requirements of <u>United States ex rel. Touhy v. Ragen</u>, 340 U.S. 462 (1951), and, for that reason, Agent Kidwell could not be compelled to testify. The transcript of the preliminary hearing reflects that counsel for Petitioner confessed the motion to quash and withdrew the subpoena.  <u>See</u> Dkt. # 24-3, Ex. 3; Dkt. # 52, Prelim. Hr'g Trans. at 4. Petitioner does not suggest that he ever requested reissuance of the subpoena. Under these facts, the Court finds appellate counsel did not perform deficiently in failing to raise a compulsory process claim as to Agent Kidwell. In addition, Petitioner has failed to demonstrate that the result of his appeal would have been different had appellate counsel raised this claim.

As to Petitioner's claim regarding Kristi Roberts, the record confirms that she did not appear at any of the several <u>Kastigar</u> hearings held in the trial court.  <u>See</u> Dkt. # 20-16, App. P; Dkt. # 20-17, App. Q; and Dkt. # 20-18, App. R. Significantly, however, she testified at trial and was subjected to cross-examination by defense counsel.  <u>See</u> Dkt. # 26-4, Tr. Trans. at 530-60. In his habeas petition, Petitioner fails to explain what testimony he would have elicited had Kristi Roberts appeared at a <u>Kastigar</u> hearing.[8] As a result, his claim is conclusory.  He has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

---

[8]    In his amended reply (Dkt. # 48), Petitioner alleges that "[t]he State did not want Christy [sic] Roberts on the stand in <u>Kastigar</u> because she was aware of fact DEA was at Doubletree Hotel during the period of July 4, 2003."  Even if it is true that DEA agents were present at the Doubletree Hotel, Petitioner has failed to demonstrate that the state courts' immunity rulings would have been different.  Therefore, Petitioner has not demonstrated that the result of his appeal would have been different and appellate counsel did not provide ineffective assistance in failing to raise this claim.

**i.      Failure to raise Sixth Amendment confrontation clause claim (ground 16)**

In proposition 16, Petitioner alleges that appellate counsel provided ineffective assistance when he omitted a claim that Petitioner was denied his right to confront a witness against him when the trial court ruled that evidence of William Hauck's prior municipal conviction for soliciting prostitution was inadmissible.  See Dkt. # 1 at 101.  The trial transcript confirms that the trial judge excluded evidence of Hauck's municipal conviction.  See Dkt. # 26-5, Tr. Trans. at 749. Nonetheless, Hauck was thoroughly cross-examined by defense counsel, id. at 750-811, and his credibility was impeached by his admissions that he was a co-defendant in Petitioner's case and that he had three prior felony convictions, id. at 750, 809-10.  In light of that record, the Court finds Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

**j.      Failure to raise improper enhancement claim (ground 17)**

Petitioner claims in ground 17 that appellate counsel failed to raise a claim that his sentence was improperly enhanced with a stale prior conviction.  See Dkt. # 1 at 101. However, appellate counsel did challenge the enhancement of Petitioner's sentence on direct appeal, see Dkt. # 20-6, App. F, where the OCCA rejected the claim, finding that "[a]lthough these crimes were committed close to the end of the ten-year enhancement window, they were clearly within this window.  Thus, it was entirely appropriate to use the New Jersey felony conviction to enhance Skinner's current conviction."  Skinner, 210 P.3d at 854.  In footnote 79 of the direct appeal opinion, the OCCA also noted that, while the record suggested Petitioner's intervening federal misdemeanor was one of moral turpitude, it was not an issue the Court needed to address. Id.

On post-conviction appeal, Petitioner argued that appellate counsel should have included a document from the New Jersey case purportedly demonstrating that he had discharged early from the New Jersey conviction.  The OCCA rejected this claim, citing Okla. Stat. tit. 21, § 51.1, and stating that:

> Petitioner claims his trial counsel was ineffective for failing to inform the jury that the New Jersey felony used to enhance his sentence was more than ten years old. Petitioner has included documentation to support this assertion, but doesn't establish it was presented to the District Court. The documentation is an order for early termination of his *probation* in the New Jersey case, but it does not reflect that execution of his sentence was terminated early.

(Dkt. # 20-15, App. O (emphasis in original)).  The OCCA also ruled on Petitioner's application to supplement the post-conviction record with the order for early termination of his probation entered in the New Jersey case. The OCCA again stated that "[t]he [New Jersey] order does not reflect that execution of his sentence was terminated early," and went on to deny the motion, stating that "[t]he record in a post-conviction appeal consists of and is limited to matters presented to and considered by the District Court." Id. This Court's review under 28 U.S.C. § 2254(d)(1) of Petitioner's claim of ineffective assistance of appellate counsel, adjudicated on the merits by the OCCA, is limited to the record that was before the OCCA when it adjudicated the claim on the merits. Pinholster, 131 S. Ct. at 1398. The OCCA did not allow Petitioner to supplement the post-conviction appeal record with the order from the New Jersey court because Petitioner failed to present it to the state district court.  As a result, the post-conviction appeal record did not include the order from the New Jersey court and, under Pinholster, this Court may not consider the order in this habeas proceeding. Nonetheless, the OCCA found that Petitioner had not demonstrated that his New Jersey sentence was terminated outside the ten (10) year limit, as required under Okla. Stat. tit. 21, § 51.1.  In light of the OCCA's findings, the Court finds Petitioner has not demonstrated that the result of his appeal

would have been different had appellate counsel included a copy of the order entered in Petitioner's New Jersey case.

### k.      Failure to challenge admission of irrelevant testimony by victim (ground 18)

In his next claim, Petitioner alleges that appellate counsel provided ineffective assistance in failing to raise a challenge the trial court's decision to allow Brandon Green "to ramble extensively and prejudicially about a 'collapsed lung' and other matters devoid of evidence and lacking any relevance to the case," in violation of <u>Brady</u>. (Dkt. # 1 at 103).  As discussed above, however, "[t]here are three components of a true <u>Brady</u> violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Strickler</u>, 527 U.S. at 281-82.  Petitioner has failed to make a showing demonstrating any of the three components.  Furthermore, the Court disagrees with Petitioner's characterization of Green's testimony as "lacking any relevance to the case."  Under <u>Strickland</u>, Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

### l.      Failure to challenge perjured testimony by William Hauck (ground 19)

Petitioner also complains that appellate counsel provided ineffective assistance in failing to allege that William Hauck gave perjured testimony.  However, in his petition, Petitioner failed to identify with specificity what testimony was perjured.[9]  As noted by Respondent, defense counsel cross-examined Hauck regarding inconsistencies in statements given to various law enforcement

---

[9]      In his amended reply (Dkt. # 48), Petitioner identifies several specific instances of inconsistencies in Hauck's various statements and testimony and mischaracterizes those inconsistencies as perjury.

officers.  Those alleged inconsistencies do not rise to the level of perjured testimony.  Petitioner's claim is unsupported and conclusory.  He has not satisfied the prejudice prong of the <u>Strickland</u> standard because he has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

<strong>m.      Failure to raise claims of prosecutorial and police misconduct (ground 20)</strong>

In ground 20, Petitioner alleges that appellate counsel provided ineffective assistance in failing to raise claims of prosecutorial and police misconduct.  (Dkt. # 1 at 105).  Specifically, Petitioner claims that he repeatedly requested that he be provided phone records in order to prove that no communication between himself and Hauck occurred during the time of the incidents giving rise to criminal charges in this case, while Hauck did communicate with Kristi Roberts, the DEA, and possibly the FBI.  <u>Id.</u> He cites <u>Brady</u> in support of this claim.  On post-conviction appeal, the OCCA reviewed this claim and held that:

> Again, Petitioner offers no documentation or evidence supporting these assertions and hasn't established that the outcome of his appeal would have or should have been different.  Thus, he hasn't established actual ineffectiveness of his appellate counsel, and he hasn't established factual innocence.

<u>See</u> Dkt. # 20-15, App. O at 5.

Nothing provided by Petitioner in the habeas petition demonstrates that the OCCA's adjudication of this claim was contrary to, or an unreasonable application of, <u>Strickland</u>.  His claim is unsupported and conclusory.[10]  He has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

---

[10]      Additional information provided by Petitioner in the amended reply (Dkt. # 48) is speculative, unsupported, and, in large part, irrelevant.

27

### n.      Failure to raise violation of IADA (ground 21)

In ground 21, Petitioner alleges that appellate counsel provided ineffective assistance in failing "to competently articulate" a claim that his conviction was obtained in violation of the Interstate Agreement on Detainers Act (IADA). As recognized by Petitioner, appellate counsel did in fact raise a claim that Petitioner's trial and resulting convictions violated the IADA.  See Dkt. # 20-6, App. F.  In rejecting the claim on direct appeal, the OCCA determined that:

> [T]he State's brief accurately catalogs the various continuances granted in this case -- mostly at Skinner's request and with his explicit waiver of the IADA's 120-day rule. Skinner has totally failed to demonstrate that the timing of his trial violated the IADA. This claim is rejected accordingly.

Skinner, 210 P.3d at 853 (footnote omitted).

Petitioner fails to offer any factual support for his claim that appellate counsel failed to present this claim competently or "correctly." See Dkt. # 48.  The Court has reviewed the original record provided by Petitioner in this case.  That record confirms that Petitioner waived the 120-day rule and requested a continuance.  See Dkt. # 20-30, App. DD at 150-54, 165-67.  In light of that record, the Court finds Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim differently on direct appeal.

### o.    Failure to argue withheld evidence of "reverse sting operation" (ground 22)

In ground 22, Petitioner identifies another alleged <u>Brady</u> violation and claims that appellate counsel provided ineffective assistance in failing to raise it on direct appeal.  This claim involves evidence that Hauck participated in a "reverse sting operation" involving Petitioner's cousin, Michael Chasteen. Apparently, Petitioner's family offered to pay Hauck money in exchange for his agreement to leave the country.  The existence of a tape recorded conversation between Hauck and Chasteen was first presented by the prosecution in early June, just before trial.[11]  The content of the tape was not favorable to Petitioner.  He has failed to demonstrate that earlier presentation of the tape would have altered the outcome of his trial. Furthermore, he has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim on direct appeal.

### p.    Failure to challenge trial court's "arbitrary and capricious decisions" (ground 23)

Finally, Petitioner claims that appellate counsel provided ineffective assistance in failing to allege that the trial court made "arbitrary and capricious decisions" resulting in a denial of Petitioner's right to due process.  In his petition, Petitioner fails to identify with specificity any

---

[11]    Information provided by Petitioner in his amended reply (Dkt. # 48) makes clear that he knew of tape recorded phone conversations between Hauck and Chasteen well before the commencement of trial. He states that his lawyers turned over the tapes to the Tulsa County District Attorney in February 2004, and that his family turned over tapes to Detective Watkins in February 2005.  <u>See</u> Dkt. # 48.

ruling by the trial court that was arbitrary and capricious.[12] The Court has carefully reviewed the record in this case and finds that Petitioner received a fair trial which comported with due process. Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim.

In summary, upon review of Petitioner's claims of ineffective assistance of appellate counsel, the Court has examined the omitted issues and concludes that Petitioner was not prejudiced by appellate counsel's performance, even if that performance was deficient. Petitioner has not demonstrated that the OCCA's adjudication of his claim of ineffective assistance of appellate counsel was contrary to, or an unreasonable application of, <u>Strickland</u>.  He is not entitled to habeas corpus relief on his claims of ineffective assistance of appellate counsel.

### 3.        Challenges to state post-conviction procedures (grounds 8, 9, 10, and 11)

In grounds 8-11, Petitioner argues that the rules governing state court procedures for post-conviction relief violate his right to due process and that the state courts' arbitrary and capricious rulings based on application of those rules were independent due process violations. Specifically, in ground 8, Petitioner alleges that the state district court's post-conviction findings were inaccurate and that the court erred in denying Petitioner's request for an evidentiary hearing. <u>See</u> Dkt. # 1 at

---

[12]        In his amended reply, Petitioner complains of specific rulings by the trial judge including preventing defense counsel from eliciting testimony that Green and Cole were drug dealers working with the DEA, preventing defense counsel from presenting evidence that Green had been arrested for drugs and was motivated to accuse Petitioner of being responsible for his arrest, preventing defense counsel from presenting evidence that Green was on pre-trial release and had lied to his bail bond company about his employment, preventing both the prosecution and defense from eliciting testimony concerning the DEA or the FBI, and in allowing the prosecutor to state to the jury that Hauck was the first person to go to law enforcement. <u>See</u> Dkt. # 48.  None of those rulings was arbitrary and capricious.  Petitioner has not demonstrated that the result of his appeal would have been different had appellate counsel raised this claim on direct appeal.

89. Petitioner raised this claim on post-conviction appeal, where Petitioner's request for an evidentiary hearing was denied by the OCCA, as follows:

> Petitioner claims he is entitled to an evidentiary hearing to obtain witnesses and present evidence. He makes assertions that there is material evidence requiring a hearing. In post-conviction proceedings, the petitioner must establish the existence of a material issue of fact to warrant an evidentiary hearing. 22 O.S.2001, §§ 1083, 1084. Petitioner has not proffered non-record evidence nor diligently developed the factual basis of his claim to support his application for an evidentiary hearing.

(Dkt. # 20-15, App. O at 5-6 (citation omitted)).   In ground 9, Petitioner complains that the state district court abdicated its authority by copying verbatim (including typographic errors) much of the district attorney's response to the application for post-conviction relief. <u>See</u> Dkt. # 1 at 95. On post-conviction appeal, the OCCA determined that:

> [T]he District Court has the authority to determine the findings of fact and conclusions of law used to support the post-conviction order. 22 O.S.2001, § 1083, 1084. Petitioner has not established that the District Court erred or abused its discretion. Rule 5.2(A), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011); *Yingst v. State*, 1971 OK CR 35, ¶8, 480 P.2d 276, 277.

(Dkt. # 20-15, App. O at 3).   As his tenth ground of error, Petitioner complains that the state courts applied the Uniform Post Conviction Procedure Act, Okla. Stat. tit. 22, § 1080, <u>et</u> <u>seq</u>., and Rule 3.11, Rules of the Oklahoma Court of Criminal Appeals, to resolve his application for post-conviction relief in violation of fundamental procedural due process principles. <u>See</u> Dkt. # 1 at 96. The OCCA denied relief on this claim, explaining that Rule 3.11 applies to evidentiary hearings requested on direct appeal, not in post-conviction proceedings.   Since appellate counsel did not seek to utilize Rule 3.11 on direct appeal, "its adequacy or evenhanded application are not at issue in Petitioner's case."  (Dkt. # 20-15, App. O at 2).  In ground 11, Petitioner claims that the state district court erred by allowing the district attorney (a respondent) to answer and reply to Petitioner's application for post conviction relief. <u>See</u> Dkt. # 1 at 96. The OCCA rejected this claim, stating that:

> Petitioner also claims, without any elaboration, that the District Court erred by allowing the District Attorney (a respondent) to answer and reply to Petitioner's post-conviction application. The District Court did not err by allowing a response authorized by statute.  22 O.S.2001, § 1083(a).

(Dkt. # 20-15, App. O at 3).

These claims focus, in large part, on alleged inadequacies of Oklahoma's post-conviction remedy.  However, it is well established that the federal writ of habeas corpus reaches only convictions in violation of the United States Constitution, laws, or treaties. E.g. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Pulley v. Harris, 465 U.S. 37, 41 (1984); Smith v. Phillips, 455 U.S. 209, 221 (1982); Brinlee v. Crisp, 608 F.2d 839, 843 (10th Cir. 1979). In this regard, the Supreme Court has stated that "[f]ederal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Phillips, 455 U.S. at 221. The Tenth Circuit Court of Appeals has held that an attempt by a habeas petitioner to challenge "the Oklahoma post-conviction procedures on their face and as applied to him would fail to state a federal constitutional claim cognizable in a federal habeas proceeding." Steele v. Young, 11 F.3d 1518, 1521, 1524 (10th Cir. 1993); see also Sellers v. Ward, 135 F.3d 1333, 1339 (10th Cir. 1998) (holding that an alleged deprivation of due process based on the state appellate court's refusal to grant post-conviction review was not cognizable on federal habeas corpus "because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration"); Graves v. Boone, No. 99-7013, 1999 WL 1079626, at *2 (10th Cir. Nov. 30, 1999) (unpublished)[13] ("Mr. Graves' challenges to Oklahoma's

---

[13]     Unpublished opinion cited for persuasive authority pursuant to Tenth Circuit Rule 32.1.

post-conviction procedures do not amount to federal constitutional claims in a federal habeas action.").

Petitioner's challenge to the state courts' consideration and resolution of his application for post-conviction relief, as raised in grounds 8-11, is a challenge to Oklahoma post-conviction procedures and fails to state the deprivation of a federal constitutional right. Thus, those claims shall be denied for failure to state a cognizable claim for habeas relief.

## C. Certificate of appealability

On August 27, 2012, Petitioner filed a "prophylactic, based on in futuro answer," application for a certificate of appealability (Dkt. # 76).  On September 12, 2012, he filed a 95-page amended application for certificate of appealability (Dkt. # 78).  Rule 11, Rules Governing Section 2254 Cases in the United States District Courts, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of deference to the decisions by the OCCA was debatable amongst jurists of reason.  See Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004).  The record is devoid of any authority suggesting that the Tenth Circuit Court of

33

Appeals would resolve the issues in this case differently. Petitioner's motion and amended motion for a certificate of appealability (Dkt. ## 76, 78) shall be denied, and his motion to increase page limit (Dkt. # 77) is moot.

***CONCLUSION***

After careful review of the record in this case, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States. Therefore, his petition for writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1.   The petition for writ of habeas corpus (Dkt. # 1) is **denied**.

2.   Petitioner's motion and amended motion for a certificate of appealability (Dkt. ## 76, 78) are **denied**.

3.   Petitioner's motion for leave of Court to increase page limit (Dkt. # 77) is **moot**.

4.   A separate judgment in favor of Respondent shall be entered in this matter.

5.   The Clerk shall send a copy of this Opinion and Order to the Tenth Circuit Court of Appeals as it relates to Tenth Circuit Case No. 12-5131.

**DATED** this 17th day of September, 2012.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE